UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JIN M. CAO, LI F. LI, XIAN H. ZHUANG,　　　:
GWEE MIN, SHI H. CHEN, SHAN X. CHEN,　　　:
ZHANG W. ZHANG, QUAN LIN, TANG X.　　　　:
LI, YUN H. CHI, QI WENG, LEI LI, ZHEN J.　　　:
WENG, YI LIN, GUO X. WANG, QING L.　　　　:
JIANG, YONG Q. LIN, ZENG X. HUANG,　　　　:
YI L. DONG, YI P. WANG, GUO H. LIU,　　　　:
GUO T. LIU, QUAN Z. LI, GUO X. LIU,　　　　:
TENG Y. CHEN, and GENG D. WENG,　　　　　:
　　　　　　　　　　　　　　　　　　　　　:　　No. 08 Civ. 3725 (DC)(HP)
　　　　　　　　Plaintiffs,　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　:　　ECF CASE
　　　　　- against -　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　:
WU LIANG YE LEXINGTON　　　　　　　　　:
RESTAURANT, INC., WU LIANG YE 86　　　　　:
RESTAURANT, INC., WU LIANG YE　　　　　　:
U.S.A., INC., JIAN LI, a.k.a. JAMES LI,　　　　:
SUSAN LI, STEVEN LO, JOHN ZHONG,　　　　　:
and TOM TAN,　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　Defendants.　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　:

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' APPLICATION FOR DAMAGES

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017

ASIAN AMERICAN LEGAL
DEFENSE AND EDUCATION FUND
99 Hudson Street
New York, New York 10038

*Attorneys for Plaintiffs*

November 4, 2009

**TABLE OF CONTENTS**

P<small>AGE</small>

PRELIMINARY STATEMENT ....................................................................... 1

STATEMENT OF UNDISPUTED FACTS ..................................................... 3

ARGUMENT .................................................................................................. 5

I.    PLAINTIFFS ARE ENTITLED TO UNPAID WAGES UNDER FLSA AND NEW YORK LABOR LAW FOR THE ENTIRETY OF THEIR EMPLOYMENT .................................................................................... 5

    A.    The FLSA and New York Labor Law Statutes of Limitations Should Be Equitably Tolled for the Entire Period of Plaintiffs' Employment ....... 5

    B.    If the Court Determines That Equitable Tolling Does Not Apply, Plaintiffs Still May Recover Damages for Six Years Under New York Labor Law and Three Years Under FLSA ................................................. 9

II.    PLAINTIFFS ARE ENTITLED TO UNPAID WAGES UNDER FLSA AND NEW YORK LABOR LAW ............................................................... 11

    A.    Plaintiffs are Entitled to Minimum Wage and Overtime Pay Under FLSA and New York Labor Law ............................................................. 11

    B.    Under FLSA and New York Labor Law, Plaintiffs May Recover Unpaid Wages at the Ordinary, Statutorily Prescribed Minimum Wage and Overtime Rates Rather than the Reduced Rates that Apply to "Tipped" Employees ................................................................................ 11

    C.    The Applicable Minimum Wage Should be the Higher of the Federal and State Minimum Wage for the Relevant Time Period ......................... 14

    D.    Plaintiffs Are Entitled to Spread-of-Hours Compensation Under New York Labor Law in Addition to Federal or State Minimum Wage and Overtime Damages ................................................................................... 15

    E.    Damage Computations for the Wage and Hour Violations and the Underlying Data Are Set Forth In the Attached Exhibits ......................... 17

III.    BECAUSE THEY WERE PAID BELOW THE MINIMUM WAGE, PLAINTIFFS ARE FURTHER ENTITLED TO THE RETURN OF MONEY SPENT ON TOOLS OF THE TRADE, AS WELL AS UNLAWFUL DEDUCTIONS TAKEN FROM THEIR TIPS ................................................. 18

i

A. Plaintiffs Are Entitled to Compensation for the Purchase and Maintenance of Bicycles and Uniforms They Used Primarily for the Benefit and Convenience of Their Employers ........................................... 18

B. Plaintiffs Are Entitled to the Return of Unlawful Deductions Made By the Defendants From Plaintiffs' Tips ........................................................ 21

IV. PLAINTIFFS ARE ENTITLED TO LIQUIDATED DAMAGES UNDER BOTH STATE AND FEDERAL LAW AND PREJUDGMENT INTEREST UNDER STATE LAW ........................................................................................ 24

A. FLSA Liquidated Damages .......................................................................... 24

B. New York Labor Law Liquidated Damages ............................................. 26

C. Plaintiffs Are Entitled to Both FLSA and New York Labor Law Liquidated Damages ................................................................................. 27

D. Plaintiffs are Entitled to Prejudgment Interest Under New York Law ..... 28

V. JIAN LI AND SUSAN LI ARE EMPLOYERS AND THUS PERSONALLY LIABLE FOR PLAINTIFFS' UNPAID WAGES ................................................. 29

VI. PLAINTIFFS ARE ENTITLED TO ATTORNEYS' FEES AND COSTS ......... 31

CONCLUSION ............................................................................................................. 34

# TABLE OF AUTHORITIES

PAGE

## Cases

Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946) ............................................. 2

Ansoumana v. Gristede's Operating Corp., 255 F. Supp. 2d 184 (S.D.N.Y. 2003) ......... 29

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522
    F.3d 182 (2d Cir. 2007, amended Apr. 10, 2008) ....................................................... 31

Arriaga v. Fla. Pac. Farms, L.L.C., 305 F.3d 1228 (11th Cir. 2002)................................. 18

Barcellona v. Tiffany English Pub, Inc., 597 F.2d 464 (5th Cir. 1979)............................. 12

Blake v. CMB Constr., Civ. No. 90-388-M, 1993 WL 840278 (D.N.H. Mar. 30,
    1993) ......................................................................................................................... 9

Bowers v. Transportacion Maritima Mexicana, S.A., 901 F.2d 258 (2d Cir. 1990) .......... 6

Brennan v. Modern Chevrolet Co., 363 F. Supp. 327 (N.D. Tex. 1973), aff'd, 491
    F.2d 1271 (5th Cir. 1974) ......................................................................................... 19

Brock v. Wilamowsky, 833 F.2d 11 (2d Cir. 1987) .................................................... 24, 28

Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697 (1945) ...................................................... 28

Callowhill v. Allen-Sherman-Hoff Co., Inc., 832 F.2d 269 (3d Cir. 1987)....................... 9

Cerbone v. Int'l Ladies' Garment Workers' Union, 768 F.2d 45 (2d Cir. 1985) ............... 6

Cesario v. BNI Construction, Inc., No. 07 Civ. 8545 (LLS) (GWG), 2008 U.S.
    Dist. LEXIS 103155 (Dec. 15, 2008) ...................................................................... 31

Chan v. Sung Yue Tung Corp., No. 03 Civ. 6048 (GEL), 2007 WL 1373118
    (S.D.N.Y. May 8, 2007).......................................................................................... 33

Chan v. Sung Yue Tung Corp., No. 03 Civ. 6048 (GEL), 2007 WL 313483
    (S.D.N.Y. Feb. 1, 2007) .................................................... 12, 15, 16, 23, 29

Chung v. New Silver Palace Rest., Inc., 246 F. Supp. 2d 220 (S.D.N.Y. 2002) .............. 12

Cortez v. Medina's Landscaping, No. 00 C 6320, 2002 WL 31175471 (N.D. Ill.
    Sept. 30, 2002) .......................................................................................................... 9

Cuzco v. Orion Builders, Inc., No. 06 Civ 2789 (KMW) (THK), 2009 U.S. Dist.
LEXIS 91347 (S.D.N.Y. Sept. 30, 2009) .................................................................. 2

De Luna-Guerrero v. The North Carolina Grower's Ass'n, 338 F. Supp. 2d 649
(E.D.N.C. 2004) ....................................................................................................... 18

Falk v. Brennan, 414 U.S. 190 (1973) .......................................................................... 29

Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155 (2d Cir.
1992) ........................................................................................................................... 2

Hai Ming Lu v. Jing Fong Restaurant, Inc., 503 F. Supp. 2d 706 (S.D.N.Y. 2007)......... 23

Henchy v. City of Absecon, 148 F. Supp. 2d 435 (D.N.J. 2001) ...................................... 9

Herman v. Express Sixty-Minutes Delivery Services, Inc., 161 F.3d 299 (5th Cir.
1998) ......................................................................................................................... 19

Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132 (2d Cir. 1999)............... 25, 27, 28, 29, 30

Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363 (S.D.N.Y. 2007)...................... 9

Jiao v. Chen, No. 03 Civ. 0165 (DF), 2007 WL 4944767 (S.D.N.Y. Mar. 30,
2007) ......................................................................................................................... 29

Kamens v. Summit Stainless, Inc., 586 F. Supp. 324 (E.D. Pa. 1984) .............................. 9

Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240 (S.D.N.Y. 2008) ...................... 8, 15, 19, 27

Kim v. 167 Nail Plaza, No. 05 CV. 8560 (GBD), 2008 WL 2676598 (S.D.N.Y.
July 7, 2008).............................................................................................................. 27

LeBlanc-Sternberg v. Fletcher, 143 F.3d 748 (2d Cir. 1998).......................................... 33

Liu v. Jen Chu Fashion Corp., No. 00 Civ. 4221 (RJH) (AJP), 2004 WL 33412
(S.D.N.Y. Jan. 7, 2004)............................................................................................. 16

Martin v. Tango's Restaurant, Inc., 969 F.2d 1319 (1st Cir. 1992)................................ 12

McLaughlin v. Richland Shoe Co., 486 U.S. 128 (1988).......................................... 10, 26

Mendez v. Nooch, Inc., No. 07 Civ. 11174, 2009 WL 666771 (S.D.N.Y. Mar. 6,
2009) ......................................................................................................................... 10

Mercado v. Ritz-Carlton San Juan Hotel, Spa & Casino, 410 F.3d 41 (1st Cir.
2005) ........................................................................................................................... 9

Moon v. Kwon, 248 F. Supp. 2d 201 (S.D.N.Y. 2002) ...................................................... 30

Padilla v. Manlapaz, No. 07-CV-4866 (RER), 2009 WL 2500726 (E.D.N.Y. Aug. 4, 2009) ...................................................................................................................... 14

Pavia v. Around the Clock Grocery, Inc., No. 03 CV 6465 (ERK), 2005 WL 4655383 (E.D.N.Y. Nov. 15, 2005) ...................................................................... 25

Quarantino v. Tiffany & Co., 166 F.3d 422 (2d Cir. 1999) ............................................... 32

Ramirez v. CSJ & Co., No. 06 Civ. 13677 (LAK), 2007 WL 1040363 (S.D.N.Y. Apr. 3, 2007) ................................................................................................................. 8

Ramirez v. Rifkin, 568 F. Supp. 2d 262 (E.D.N.Y. 2008) ................................................. 9

Reich v. Chez Robert, Inc., 28 F.3d 401 (3d Cir. 1994) .................................................... 12

Reich v. S. New Eng. Telecomms. Corp., 121 F.3d 58 (2d Cir. 1997) .................. 2, 24, 28

Reilly v. NatWest Mkts. Group, Inc., 181 F.3d 253 (2d Cir. 1999) ................................. 28

Renteria v. Italia Foods, Inc., No. 02 C 495, 2003 WL 21995190 (N.D. Ill. Aug. 21, 2003) ................................................................................................................... 27

Richard v. Marriott Corp., 549 F.2d 303 (4th Cir. 1977) ................................................. 12

Rivera v. The Brickman Group, Ltd., Civ. No. 05-1518, 2008 WL 81570 (E.D. Pa. Jan. 7, 2008) ........................................................................................................ 18

Tlacoapa v. Carregal, 386 F. Supp. 2d 362 (S.D.N.Y. 2005) .......................................... 25

United States on behalf of Mar. Admin. v. Cont'l Ill. Nat'l Bank & Trust Co., 889 F.2d 1248 (2d Cir. 1989) ...................................................................................... 25

Veltri v. Bldg. Serv. 32B-J Pension Fund, 393 F.3d 318 (2d Cir. 2004) ............................ 6

Wong v. Yee, 262 A.D.2d 254, 693 N.Y.S.2d 536 (1st Dep't 1999) ............................... 29

Yang v. ACBL Corp., 427 F. Supp. 2d 327 (S.D.N.Y. 2005) .......................................... 16

Zheng v. Liberty Apparel Co., 355 F.3d 61 (2d Cir. 2003) ............................................. 30

**Statutes and Regulations**

29 C.F.R. § 516.4 .......................................................................................................... 7, 9

29 C.F.R. § 531.3(d)(1) ............................................................................................... 18, 20

29 C.F.R. § 531.3(d)(2) .................................................................. 19, 20

29 C.F.R. § 531.35 .................................................................. 18, 19, 21

29 U.S.C. § 201 <u>et seq.</u> .................................................................. 5

29 U.S.C. § 203(d) .................................................................. 5, 29

29 U.S.C. § 203(m) .................................................................. 11, 12, 21

29 U.S.C. § 206 .................................................................. 11

29 U.S.C. § 207 .................................................................. 11

29 U.S.C. § 216(b) .................................................................. 24, 31

29 U.S.C. § 218(a) .................................................................. 14, 15

29 U.S.C. § 255(a) .................................................................. 6, 10

29 U.S.C. § 260 .................................................................. 24

N.Y. C.P.L.R. § 5001 .................................................................. 28

N.Y. C.P.L.R. § 5004 .................................................................. 28

N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.3 .................................................................. 11

N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.7 .................................................................. 5, 15

N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.8 .................................................................. 21

N.Y. Comp. Codes R. & Regs. tit. 12, § 137-2.1 .................................................................. 14

N.Y. Comp. Codes R. & Regs. tit. 12, § 137-2.2 .................................................................. 14

N.Y. Comp. Codes R. & Regs. tit. 12, § 137-2.5(b) .................................................................. 19

N.Y. Comp. Codes R. & Regs. tit. 12, § 137-3.11 .................................................................. 16

N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4 .................................................................. 16

N.Y. Lab. Law § 193(1) .................................................................. 21

N.Y. Lab. Law § 196-d .................................................................. 21

N.Y. Lab. Law § 198(1-2) .................................................................. 31

N.Y. Lab. Law § 198(1-a)..................................................................................... 26

N.Y. Lab. Law § 198(3)..................................................................................... 6, 9

N.Y. Lab. Law § 2(6)........................................................................................ 5

N.Y. Lab. Law § 650 <u>et seq.</u>................................................................... 5, 11

N.Y. Lab. Law § 651(6)...................................................................................... 5

N.Y. Lab. Law § 652 ........................................................................................ 11

N.Y. Lab. Law § 652(4)..................................................................................... 13

N.Y. Lab. Law § 663(1)................................................................................ 26, 31

N.Y. Lab. Law § 663(3)................................................................................... 6, 9

Plaintiffs respectfully submit this Memorandum of Law in Support of Plaintiffs'

Application for Damages in accordance with the Court's October 8, 2009 Order (the

"Default Order"), which entered a default judgment against Defendants.[1]  Using

Plaintiffs' deposition testimony and affidavits, which are attached to the accompanying

Declaration of Jane H. Yoon, dated November 4, 2009 ("Yoon Decl."), the calculations

of each Plaintiff's damages are set forth in Exhibit A to the Yoon Decl.  This

Memorandum sets forth the legal bases for and methodologies used in calculating the

damages owed to Plaintiffs.

### PRELIMINARY STATEMENT

Plaintiffs worked as delivery workers, waiters, and a food packer at two Wu

Liang Ye Sichuanese restaurants (collectively, the "Restaurants") located on the east side

of Manhattan.  All of the Plaintiffs speak Chinese but little to no English and have a very

limited education.  Defendants, the corporations and individuals who owned and operated

the Restaurants, failed to inform Plaintiffs of their rights to minimum wage, overtime and

spread-of-hours pay and deprived the Plaintiffs of these and other rights.  These

violations occurred as early as 1995 and continued past the commencement of this

litigation.

This action, which was filed on April 18, 2008, asserts claims under the Fair

Labor Standards Act ("FLSA") and New York Labor Law.  Defendants defaulted on all

---

[1] Defendants in this action are Wu Liang Ye Lexington Restaurant, Inc., Wu Liang Ye 86
Restaurant, Inc., Wu Liang Ye U.S.A., Inc., Jian Li, and Susan Li.  Defendants Liang Zhang and Steven
Lok were voluntarily dismissed by Plaintiffs and stipulations of their dismissal were so ordered by the
Court.  See August 26, 2008 Stipulation of Dismissal of Defendant Liang Zhang (Ex. 1) (hereinafter,
citations in the form "Ex. __" are to exhibits to the Declaration of Jane H. Yoon ("Yoon Decl.") dated
November 4, 2009 and filed concurrently with this memorandum; Stipulation of Dismissal of Defendant
Steven Lok (Ex. 2).  Defendants Tom Tan and John Zhong were never served, and thus, were dismissed
without prejudice by the Court at a February 11, 2009 conference.  (Yoon Decl. ¶ 2.)

claims and thereby admitted all of Plaintiffs' allegations.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) (holding that when a default judgment is entered, the defendants are deemed to have admitted all of the well-pleaded factual allegations in the complaint pertaining to liability).  Thus, Defendants are liable to Plaintiffs for the following: (1) violations of minimum wage, overtime, and spread-of-hours pay laws; (2) unlawful wage deductions related to Plaintiffs' purchase and maintenance of bicycles and uniforms; (3) unlawful deductions from Plaintiffs' gratuities; (4) liquidated damages; (5) prejudgment interest on their spread-of-hours damages; and (6) attorneys' fees.  The calculations for Plaintiffs' damages are set forth in Exhibit A.

Plaintiffs assert that the following principles should apply to the calculation of damages.[2]  *First*, the state and federal statutes of limitations should be equitably tolled to cover the full period of Plaintiffs' employment for all Plaintiffs whose claims otherwise fall outside the state and federal limitations periods.  *Second*, the applicable minimum wage, for purposes of calculating minimum wage, overtime, and spread-of-hours pay

---

[2] Certain approximations were required to calculate Plaintiffs' damages and are clearly indicated in the annotations to the damages calculations attached at Exhibit A.  Such approximations are permitted under FLSA where, as here (see, e.g., Yoon Decl. ¶ 5), an employer fails to maintain required employment records.  See Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-88 (1946), superseded by statute on other grounds, Portal-to-Portal Act of 1947, Pub. L. No. 49-52, 61 Stat. 87 (holding that, if the employer has failed to maintain records and provide evidence of the precise amount of work performed by employees, "the court may … award damages to the employee, even though the result be only approximate"); see also Reich v. S. New Eng. Telecomms. Corp., 121 F.3d 58, 70 n.3 (2d Cir. 1997) (holding that a district court did not err in awarding damages, even though they "might have been somewhat generous" because the award was reasonable in light of the evidence and "the difficulty of precisely determining damages when the employer has failed to keep adequate records"); Cuzco v. Orion Builders, Inc., No. 06 Civ. 2789 (KMW) (THK), 2009 U.S. Dist. LEXIS 91347, at *17 (S.D.N.Y. Sept. 30, 2009) (holding that where an employer fails to maintain adequate records, a plaintiff need only "produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference"; if the employer fails to rebut the plaintiffs' proffer, "the court may award damages, even though the result is only approximate") (citation and internal quotation marks omitted).

damages, should be the standard minimum wage, not the lower, "tipped" minimum wage that governs wages owed to employees who are permitted to retain all of their tips and who are notified by their employers that they are "tipped employees." *Third*, the applicable minimum wage should be the federal or state minimum wage, whichever is higher at the relevant time. *Fourth*, Plaintiffs are entitled to liquidated damages under federal law, certain additional liquidated damages under state law, and prejudgment interest on their spread-of-hours damages. *Fifth*, Defendants Jian Li and Susan Li are personally liable as employers.

## STATEMENT OF UNDISPUTED FACTS

Plaintiffs worked as delivery workers, waiters, and a food packer at the Wu Liang Ye restaurants at 339 Lexington Avenue and 215 East 86th Street in Manhattan.[3] (Compl. ¶ 8.) Most Plaintiffs worked from 60 to 75 hours per week at the Restaurants and earned $300 to $750 per month, excluding tips, in wages.[4] Defendants, through their own testimony and documents, have corroborated these figures.

---

[3] Plaintiffs respectfully request that prior to entry of an award of damages for the plaintiffs Wen Zhang Zhang and Guo Yong Liu, their names be corrected to read Wen Z. Zhang and Guo Y. Liu. Currently their names are listed in the caption as Zhang W. Zhang and Guo T. Liu. This reflects typographical errors and the correct spellings of these were discovered in the process of trial preparation. (Yoon Decl. ¶ 3.) In addition, declarations in support of damages have not been submitted on behalf of Plaintiffs Geng Di Weng and Quan Zhong Li. They have ignored repeated requests by counsel and co-plaintiffs, who have attempted to contact these individuals by phone and mail, to participate in this application for damages. (Yoon Decl. ¶ 4.)

[4] Yun Hui Chi, the food packer at the Lexington Avenue restaurant, earned $1600-1900 per month (Declaration of Yun Hui Chi ("Yun H. Chi Decl.") (Ex. 3) ¶ 8), but did not earn tips. Four of the plaintiffs were delivery heads and earned between $1200 and $1400 per month. (Declaration of Guo Xing Wang ("Guo X. Wang Decl.") (Ex. 4) ¶ 8; Declaration of Yi Pin Wang ("Yi P. Wang Decl.") (Ex. 5) ¶ 8; Declaration of Teng Yu Chen ("Teng Y. Chen Decl.") (Ex. 6) ¶ 8; Declaration of Zhen Jian Weng ("Zhen J. Weng Decl.") (Ex. 7) ¶ 8.)

Defendants Wu Liang Ye Lexington Restaurant, Inc., Wu Liang Ye 86 Restaurant, Inc., and Wu Liang Ye U.S.A., Inc. are enterprises engaged in interstate commerce with gross sales exceeding $500,000 per year, and the Wu Liang Ye restaurants owned by Defendants purchased and handled goods moved in interstate commerce. (Compl. ¶ 16.) Defendant Wu Liang Ye U.S.A., Inc. is the parent of Defendants Wu Liang Ye Lexington Restaurant, Inc. and Wu Liang Ye 86 Restaurant, Inc. (Transcript of September 18, 2009 Deposition of Steven Wei (Ex. 37) 41:23-42:5, 108:6-22.) Individual Defendants Jian Li and Susan Li had the power to hire and fire employees, set wages and terms and conditions of employment, and maintain employment records at the Restaurants. (Compl. ¶¶ 17-20.) Defendant Jian Li, chief executive officer of the corporate entities that owned the restaurants (Compl. ¶ 17), began managing the day-to-day operations at the Restaurants in 2001. (Transcript of August 7, 2009 Deposition of Jian Li ("J. Li Dep.") (Ex. 27 ) 27:20-28:1.) Jian Li remained the senior manager of both restaurants (J. Li Dep. (Ex. 27) 44:10-18) until they were closed on or about October 1, 2009. Defendant Susan Li began managing the Lexington Avenue location in 2003 and the 86th Street location in or around 2006.[5] (Transcript of July 1, 2009 Deposition of Susan Li ("S. Li Dep.") (Ex. 28) at 17:14-18:3, 21:3-16.)[6] As such, all Defendants are subject to the requirements of FLSA and New York Labor Law

---

[5] These periods of control are reflected in Plaintiffs' damages calculations.

[6] Susan Li testified that she began managing the 86th Street restaurant "between 2005 to 2006" and that she "started going there in 2005." (S. Li Dep. (Ex. 28) 21:3-5, 119:10-120:3.) Therefore, for purposes of calculating Susan Li's personal liability for violations at the 86th Street restaurant, Plaintiffs have used January 1, 2006 as the date on which she became an employer at the 86th Street restaurant. See infra n.5 and Ex. A.

because they were Plaintiffs' "employers" at the Wu Liang Ye Restaurants. 29 U.S.C. § 203(d); N.Y. Lab. Law §§ 2(6), 651(6).

As set forth herein, each Plaintiff was underpaid by the Restaurants in violation of the minimum wage and overtime provisions of FLSA, 29 U.S.C. § 201 et seq., and New York Labor Law, N.Y. Lab. Law § 650 et seq. (Compl. ¶¶ 35-48.) Defendants further violated New York Labor Law by failing to comply with their spread-of-hours pay obligations. N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.7. (Compl. ¶¶ 49-53.) Defendants also violated FLSA and New York Labor Law by failing to reimburse delivery workers and waiters for the costs associated with the purchase and maintenance of bicycles and uniforms and by taking unlawful gratuities deductions. (Compl. ¶¶ 54-64.) Defendants never notified Plaintiffs of the minimum wage and overtime laws and the tip credit provision of FLSA, and did not post notices of FLSA's wage provisions in the manner required by law. (Compl. ¶¶ 65-69.)

## ARGUMENT

I. **PLAINTIFFS ARE ENTITLED TO UNPAID WAGES UNDER FLSA AND NEW YORK LABOR LAW FOR THE ENTIRETY OF THEIR EMPLOYMENT**

A. **The FLSA and New York Labor Law Statutes of Limitations Should Be Equitably Tolled for the Entire Period of Plaintiffs' Employment**

Plaintiffs seek equitable tolling of the FLSA and New York Labor Law statutes of limitations from the time of the commencement of their employment up until the commencement of this lawsuit. As set forth in Exhibits 3 through 26, one Plaintiff worked continuously as a waiter for the Restaurants beginning in 1995, a few began work in 2002 and 2003, and many others were employed beginning in 2004.

Under FLSA, the statute of limitations period is two years, 29 U.S.C. § 255(a); where defendants willfully violate the statute, the limitations period is three years. Under New York Labor Law, the statute of limitations period is six years. N.Y. Lab. Law §§ 198(3), 663(3). The doctrine of equitable tolling, however, allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances. Bowers v. Transportacion Maritima Mexicana, S.A., 901 F.2d 258, 264 (2d Cir. 1990). "The essence of the doctrine is that a statute of limitations does not run against a plaintiff who is unaware of his cause of action." Cerbone v. Int'l Ladies' Garment Workers' Union, 768 F.2d 45, 48 (2d Cir. 1985) (citations and internal quotation marks omitted). Equitable tolling may be appropriate where, as here, the defendants have violated regulations requiring them to inform the plaintiffs of their rights. See Veltri v. Bldg. Serv. 32B-J Pension Fund, 393 F.3d 318, 323-24 (2d Cir. 2004). Fraudulent concealment by defendants of critical facts is not necessary for equitable tolling. Id. at 323.

The statute of limitations for Plaintiffs' claims should be equitably tolled to cover the full period of their employment, up until the commencement of this action, because Defendants failed to notify Plaintiffs of their rights. (Compl. ¶¶ 65-69.)[7] In addition,

---

[7] See also Declaration of Jin Ming Cao (Ex. 8) ("Jin M. Cao Decl.") ¶¶ 19-20; Declaration of Li Feng Li (Ex. 9) ("Li F. Li Decl.") ¶¶ 16-17; Declaration of Xian Hua Zhuang (Ex. 10) ("Xian H. Zhuang Decl.") ¶¶ 16-17; Declaration of Min Gwee (Ex. 11) ("Min Gwee Decl.") ¶¶ 18-19; Declaration of Shi Hua Chen (Ex. 12) ("Shi H. Chen Decl.") ¶¶ 16-17; Declaration of Shan Xian Chen (Ex. 13) ("Shan X. Chen Decl.") ¶¶ 16-17; Declaration of Wen Zhang Zhang (Ex. 14) ("Wen Z. Zhang Decl.") ¶¶ 16-17; Declaration of Quan Lin (Ex. 15) ("Quan Lin Decl.") ¶¶ 18-19; Declaration of Tang Xiang Li (Ex. 16) ("Tang X. Li Decl.") ¶¶ 16-17; Declaration of Qi Weng (Ex. 17) ("Qi Weng Decl.") ¶¶ 16-17; Declaration of Lei Li (Ex. 18) ("Lei Li Decl.") ¶¶ 16-17; Zhen J. Weng Decl. (Ex. 7) ¶¶ 16-17; Declaration of Yi Lin (Ex. 19) ("Yi Lin Decl.") ¶¶ 17-18; Guo X. Wang Decl. (Ex. 4) ¶¶ 16-17; Declaration of Qing Ling Jiang (Ex. 20) ("Qing L. Jiang Decl.") ¶¶ 16-17; Declaration of Yong Quan Lin (Ex. 21) ("Yong Q. Lin Decl.") ¶¶ 16-17; Declaration of Zeng Xiang Huang (Ex. 22) ("Zeng X. Huang Decl.") ¶¶ 16-17; Declaration of Yi Lin Dong (Ex. 23) ("Yi L. Dong Decl.") ¶¶ 16-17; Yi P. Wang Decl. (Ex. 5) ¶¶ 16-17; Declaration of Guo Hua Liu

Defendants failed to comply with the FLSA requirement that any employer subject to FLSA's minimum wage provisions must "post and keep posted a notice explaining the Act … in conspicuous places in every establishment where such employees are employed so as to permit them to observe readily a copy."  29 C.F.R. § 516.4.  This government-issued notice not only lists the minimum wage, but explains FLSA's "tip credit" provision and that the law prohibits discrimination or retaliation against workers who seek relief under the Act.

In this case, no meaningful, conspicuous notice was ever posted.[8]  Plaintiffs alleged and testified that such a notice was not posted in any language they could read or understand, and the Defendants conceded that they never attempted to post such a notice in Chinese, the only language the Plaintiffs can read.[9]  (Compl. ¶ 68.)  As a consequence, Plaintiffs were unaware of their rights to a minimum wage and overtime pay until shortly before bringing this lawsuit—in most cases, 2007—when they heard or read about

---

(Ex. 24) ("Guo H. Liu Decl.") ¶¶ 11, 16; Declaration of Guo Yong Liu (Ex. 25) ("Guo Y. Liu Decl.") ¶¶ 16-17; Declaration of Guo Xian Liu Decl. (Ex. 26) ("Guo X. Liu Decl.") ¶¶ 16-17; Teng Y. Chen Decl. (Ex. 6) ¶¶ 16-17; Yun H. Chi Decl. (Ex. 3) ¶¶ 10-11.

[8] Indeed, Susan Li testified that when she first attempted to post a non-Chinese notice at the restaurants in 2008 or 2009, she noticed a non-Chinese poster in an inconspicuous location that she had never noticed before.  (S. Li Dep. (Ex. 28) 109:25-113:3.)

[9] See, e.g., Jin M. Cao Decl. (Ex. 8) ¶ 19; Li F. Li Decl. (Ex. 9) ¶ 16; Xian H. Zhuang Decl. (Ex. 10) ¶ 16; Min Gwee Decl. (Ex. 11) ¶ 18; Shi H. Chen (Ex. 12) ¶ 16; Shan X. Chen (Ex. 13) ¶ 16; Wen Z. Zhang (Ex. 14) ¶ 16; Quan Lin Decl. (Ex. 15) ¶ 18; Tang X. Li Decl. (Ex. 16) ¶ 16; Qi Weng Decl. (Ex. 17) ¶ 16; Lei Li Decl. (Ex. 18) ¶ 16; Zhen J. Weng Decl. (Ex. 7) ¶ 16; Yi Lin Decl. (Ex. 19) ¶ 17; Guo X. Wang Decl. (Ex. 4) ¶ 16; Qing L. Jiang Decl. (Ex. 20) ¶ 16; Yong Q. Lin Decl. (Ex. 21) ¶ 16; Zeng X. Huang Decl. (Ex. 22) ¶ 16; Yi L. Dong Decl. (Ex. 23) ¶ 16; Yi P. Wang Decl. (Ex. 5) ¶ 16; Guo H. Liu Decl. (Ex. 24) ¶ 16; Guo Y. Liu Decl. (Ex. 25) ¶ 16; Guo X. Liu Decl. (Ex. 26) ¶ 16; Teng Y. Chen Decl. (Ex. 6) ¶ 16; Yun H. Chi Decl. (Ex. 3) ¶ 10.

similar wage-and-hour violations and lawsuits at other New York City restaurants, such as the case against Saigon Grill.[10]

In Ramirez v. CSJ & Co., No. 06 Civ. 13677 (LAK), 2007 WL 1040363, at *3 (S.D.N.Y. Apr. 3, 2007), Judge Kaplan explained why equitable tolling is appropriate under precisely these circumstances:

> The … plaintiffs in this case were employed to make deliveries to customers for a delicatessen offering take-out service. Anyone who has lived in New York in recent decades knows, and plaintiffs in any case would be entitled to prove, that such jobs are filled by individuals at the bottom of the economic ladder, often immigrants with few skills and limited education. The ability of most to learn of their legal rights under the complex web of labor and social legislation that governs the modern workplace is not great. Thus, employers that fail to post the required notices take advantage of the defenseless in a very real way, whether out of venality or otherwise. In any case, they frustrate legislative objective of protecting those most in need of protection.

In accord with Judge Kaplan's reasoning, many courts have recognized that equitable tolling of the statute of limitations is appropriate in FLSA cases. See, e.g., id. (denying motion to dismiss so as to permit plaintiffs to prove equitable tolling at trial); Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 259-260 (S.D.N.Y. 2008) (holding that the statute of limitations was equitably tolled where defendants did not comply with FLSA's notice requirement "and made no effort to provide any other form of notice to the

---

[10] See, e.g., Jin M. Cao Decl. (Ex. 8) ¶ 20; Li F. Li Decl. (Ex. 9) ¶ 17; Xian H. Zhuang Decl. (Ex. 10) ¶ 17; Min Gwee Decl. (Ex. 11) ¶ 19; Shi H. Chen (Ex. 12) ¶ 17; Shan X. Chen (Ex. 13) ¶ 17; Wen Z. Zhang (Ex. 14) ¶ 17; Quan Lin Decl. (Ex. 15) ¶ 19; Tang X. Li Decl. (Ex. 16) ¶ 17; Qi Weng Decl. (Ex. 17) ¶ 17; Lei Li Decl. (Ex. 18) ¶ 17; Zhen J. Weng Decl. (Ex. 7) ¶ 17; Yi Lin Decl. (Ex. 19) ¶ 18; Guo X. Wang Decl. (Ex. 4) ¶ 17; Qing L. Jiang Decl. (Ex. 20) ¶ 17; Yong Q. Lin Decl. (Ex. 21) ¶ 17; Zeng X. Huang Decl. (Ex. 22) ¶ 17; Yi L. Dong Decl. (Ex. 23) ¶ 17; Yi P. Wang Decl. (Ex. 5) ¶ 17; Guo H. Liu Decl. (Ex. 24) ¶ 17; Guo Y. Liu Decl. (Ex. 25) ¶ 17; Guo X. Liu Decl. (Ex. 26) ¶ 17; Teng Y. Chen Decl. (Ex. 6) ¶ 17; Yun H. Chi Decl. (Ex. 3) ¶ 11.

plaintiffs about their rights and the requirements of the FLSA"); <u>Iglesias-Mendoza v. La Belle Farm, Inc.</u>, 239 F.R.D. 363, 369 (S.D.N.Y. 2007) (allowing plaintiffs discovery on whether defendants provided adequate notice of plaintiffs' rights before deciding the applicability of equitable tolling to the statute of limitations); <u>Cortez v. Medina's Landscaping, Inc.</u>, No. 00 C 6320, 2002 WL 31175471, at *6 (N.D. Ill. Sept. 30, 2002) ("[T]his court holds that an employer's failure to post the notice required by 29 C.F.R. § 516.4 tolls the limitations period until the employee acquires a general awareness of his rights under the FLSA."); <u>Henchy v. City of Absecon</u>, 148 F. Supp. 2d 435, 439 (D.N.J. 2001); <u>Blake v. CMB Constr.</u>, Civ. No. 90-388-M, 1993 WL 840278, at *6 (D.N.H. Mar. 30, 1993); <u>Kamens v. Summit Stainless, Inc.</u>, 586 F. Supp. 324, 328 (E.D. Pa. 1984).[11] The statute of limitations for Plaintiffs' claims should be equitably tolled to cover the full period of their employment because Defendants failed to notify Plaintiffs of their rights.[12]

### B. If the Court Determines That Equitable Tolling Does Not Apply, Plaintiffs Still May Recover Damages for Six Years Under New York Labor Law and Three Years Under FLSA

If the Court determines that equitable tolling does not apply, Plaintiffs still may recover damages for minimum wage, overtime, and spread-of-hours violations, unlawful deductions, and gratuities violations, for six years under New York Labor Law. N.Y. Lab. Law §§ 198(3), 663(3). In addition, Plaintiffs still may recover for minimum wage

---

[11] Many courts have likewise noted and held that the limitations period for other employment-related statutes may be tolled where, as here, employers failed to post notices of employees' rights, as required by law. <u>See, e.g.</u>, <u>Mercado v. Ritz-Carlton San Juan Hotel, Spa & Casino</u>, 410 F.3d 41, 46 (1st Cir. 2005) (Title VII); <u>Callowhill v. Allen-Sherman-Hoff Co., Inc.</u>, 832 F.2d 269, 272 (3d Cir. 1987) (Age Discrimination in Employment Act).

[12] "[F]ederal district courts apply the same standard for equitable tolling of state labor law claims as for tolling FLSA claims." <u>Ramirez v. Rifkin</u>, 568 F. Supp. 2d 262, 273 (E.D.N.Y. 2008).

and overtime violations, unlawful deductions, and gratuities violations for three years under FLSA.  29 U.S.C. § 255(a).  While the statute of limitations under FLSA is ordinarily two years, it may be extended to three years if the cause of action arises out of a "willful" violation of the Act.  29 U.S.C. § 255(a).  A willful violation is one where "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988).

In this case, Defendants willfully violated FLSA and indeed defaulted on Plaintiffs' allegations that their violations were willful.  (Compl. ¶ 70.)  See Mendez v. Nooch, Inc., No. 07 Civ. 11174, 2009 WL 666771, at *4 (S.D.N.Y. Mar. 6, 2009) (extending the limitations period to three years against Defendants who had defaulted, citing allegations in the complaint that Defendants had willfully violated FLSA). Furthermore, Defendants conceded that they did not attempt to learn about the requirements of FLSA until at least March 2008, shortly before this litigation was filed. (S. Li Dep. (Ex. 28) 32:22-33:7; J. Li Dep. (Ex. 27) 41:12-41:18, 122:20-123:4, 123:10-124:8.); see also infra IV.B.  Thus, to the extent the Court determines that the statute of limitations under FLSA should not be tolled to cover Plaintiffs' full period of employment, Plaintiffs assert that they are entitled to the three-year limitations period.[13]

---

[13] Plaintiffs respectfully request the opportunity to submit revised damages calculations if the Court determines that the statutes of limitations should not be equitably tolled to allow Plaintiffs to recover damages for their full period of employment at the Restaurants.

## II. PLAINTIFFS ARE ENTITLED TO UNPAID WAGES UNDER FLSA AND NEW YORK LABOR LAW

### A. Plaintiffs are Entitled to Minimum Wage and Overtime Pay Under FLSA and New York Labor Law

Both FLSA and New York Labor Law require employers to pay their employees specified minimum wages. 29 U.S.C. § 206; N.Y. Lab. Law § 652. In addition, FLSA and New York Labor Law require employers to pay their employees an overtime rate of one-and-a-half times the regular rate of pay for each hour of work over 40 hours a week. 29 U.S.C. § 207; N.Y. Lab. Law § 650 et. seq., N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.3. Plaintiffs have established that, pursuant to FLSA and New York Labor Law, they were not paid the minimum wage and overtime pay. (Compl. ¶¶ 35-48.) The remainder of this Section sets forth certain legal principles relevant to the calculation of damages for Defendants' violations of minimum wage and overtime law.

### B. Under FLSA and New York Labor Law, Plaintiffs May Recover Unpaid Wages at the Ordinary, Statutorily Prescribed Minimum Wage and Overtime Rates Rather than the Reduced Rates that Apply to "Tipped" Employees

In determining the amount of compensation owed to the Plaintiffs, Defendants may not benefit from the tip credit provision of FLSA, which permits employers to pay tipped employees at an hourly rate below the minimum wage if the employees' wages and tips, added together, meet or exceed the minimum wage.[14] 29 U.S.C. § 203(m). To take advantage of this "tipped minimum wage," an employer must first inform the employee of the statutory requirements related to the tip credit and allow the employee to

---

[14] Defendants cannot claim calculations based on the minimum wage for tipped employees for Plaintiff Yun H. Chi since she was employed as a packer at Wu Liang Ye's Lexington Avenue location and did not receive tips. (Yun H. Chi Decl. (Ex. 3) ¶ 5.)

keep all tips received.[15] Id.  "The two prerequisites that the employer must fulfill to be eligible for the tip credit are strictly construed, and must be satisfied even if the employee received tips at least equivalent to the minimum wage."  Chung v. New Silver Palace Rest., Inc., 246 F. Supp. 2d 220, 229 (S.D.N.Y. 2002) (citations omitted).  An employer bears the burden of showing that it has satisfied the notice requirement of the tip credit provision by, "for example, providing employees with a copy of § 203(m) and informing them that their tips will be used as a credit against the minimum wage as permitted by law."  Chan v. Sung Yue Tung Corp., No. 03 Civ. 6048 (GEL), 2007 WL 313483, at *19 (S.D.N.Y. Feb. 1, 2007).  In finding that a restaurant had failed to provide proper notice in Chan, Judge Lynch observed that the restaurant did not post any notice for a long period of time after it opened; posted the notice in English, a language few of the plaintiffs could read; and posted the notice "in a relatively inconspicuous area."  Id.[16]

Defendants failed to give Plaintiffs notice of FLSA's tip credit provision. (Compl. ¶ 41.)  Both Jian Li and Susan Li conceded that, until the month before this lawsuit was filed, Defendants did not inform employees such as the Plaintiffs that they were tipped employees.  (S. Li Dep. (Ex. 28) 91:17-93:6; J. Li Dep. (Ex. 27 ) 144:4-23.)

---

[15] An exception exists where there is a tip pooling arrangement among employees who regularly receive tips.  29 U.S.C. § 203(m).

[16] Several courts of appeals have observed that where this notice requirement is not met, lower courts lack discretion to count tips earned by employees against their recoverable damages.  See, e.g., Martin v. Tango's Restaurant, 969 F.2d 1319, 1323 (1st Cir. 1992) ("If the penalty for omitting notice appears harsh, it is also true that notice is not difficult for the employer to provide."); Reich v. Chez Robert, Inc., 28 F.3d 401, 404 (3rd Cir. 1994) ("When the employer has not notified employees that their wages are being reduced pursuant to the Act's tip-credit provision, the district court may not equitably reduce liability for back wages to account for tips actually received."); Barcellona v. Tiffany English Pub, Inc., 597 F.2d 464, 467-68 (5th Cir. 1979) (holding that where a restaurant did not tell waiters that a tip credit was being deducted from their wages, "the district court properly found that the employees were entitled to the full minimum wage for every hour" at issue); Richard v. Marriott Corp., 549 F.2d 303, 305 (4th Cir. 1977) (disallowing partial tip credit for employer based on "a vague sense of fairness").

Defendants never told Plaintiffs about the minimum wage, let alone that Defendants would count tips against their minimum wage obligations. (Compl. ¶¶ 66-69.)[17]  In fact, Defendants paid some of the Plaintiffs at rates below the *tipped* minimum wage under federal and state law.[18]  As discussed further below, <u>infra</u> III.B, Defendants did not permit Plaintiffs to keep all tips earned.  Thus, as Plaintiffs did not receive notice of the tip credit provision and were not permitted to retain all of their tips, the damages that they are entitled to recover should be based upon the ordinary minimum wage, not the "tipped minimum wage."

Similarly, although New York Labor Law allows employers to pay tipped workers in the food service industry a lower minimum wage, <u>see</u> N.Y. Lab. Law § 652(4), Defendants are not entitled to this tip credit.  A defendant may receive the benefit of this tip credit only when two preconditions are met: first, the employer furnishes "to each employee a statement with every payment of wages listing … allowances … claimed as part of the minimum wage"; and second, the employer "maintain[s] and preserve[s] for not less than six years weekly payroll records which shall show for each

---

[17] <u>See also</u> Jin M. Cao Decl. (Ex. 8) ¶¶ 11, 19; Li F. Li Decl. (Ex. 9) ¶¶ 11, 16; Xian H. Zhuang Decl. (Ex. 10) ¶¶ 11, 16; Min Gwee Decl. (Ex. 11) ¶¶ 10, 18; Shi H. Chen Decl. (Ex. 12) ¶¶ 11, 16; Shan X. Chen Decl. (Ex. 13) ¶¶ 11, 16; Wen Z. Zhang Decl. (Ex. 14) ¶¶ 11, 16; Quan Lin Decl. (Ex. 15) ¶¶ 10, 18; Tang X. Li Decl. (Ex. 16) ¶¶ 11, 16; Qi Weng Decl. (Ex. 17) ¶¶ 11, 16; Lei Li Decl. (Ex. 18) ¶¶ 11, 16; Zhen J. Weng Decl. (Ex. 7) ¶¶ 11, 17; Yi Lin Decl. (Ex. 19) ¶¶ 11, 16; Guo X. Wang Decl. (Ex. 4) ("Guo X. Wang Decl.") ¶¶ 11, 16; Qing L. Jiang Decl. (Ex. 20) ¶¶ 11, 16; Yong Q. Lin Decl. (Ex. 21) ¶¶ 11, 17; Zeng X. Huang  Decl. (Ex. 22) ¶¶ 11, 16; Yi L. Dong Decl. (Ex. 23) ¶¶ 11, 16; Yi P. Wang Decl. (Ex. 5) ¶¶ 11, 16; Guo H. Liu  Decl. (Ex. 24) ¶¶ 11, 16; Guo Y. Liu Decl. (Ex. 25) ¶¶ 11, 16; Guo X. Liu Decl. (Ex. 26) ¶¶ 11, 16; Teng Y. Chen Decl. (Ex. 6) ¶¶ 11, 16.

[18] <u>See</u> <u>e.g.</u>, Jin M. Cao Decl. (Ex. 8) ¶¶ 6, 8 (earning approximately $0.98 per hour in wages from March 2006 to April 2007); Yi L. Dong Decl. (Ex. 23) ¶¶ 6, 8 (earning approximately $1.76 per hour in wages from September 2006 to November 2006); Qing L. Jiang Decl. (Ex. 20) ¶¶ 7, 8 (earning approximately $1.80 per hour in wages from August 2004 to December 2005); Yi P. Wang Decl. (Ex. 5) ¶¶ 7, 8 (earning approximately $1.92 per hour in wages from February 2003 to March 2004).

employee … allowances … claimed as part of the minimum wage." Padilla v. Manlapaz,

No. 07-CV-4866 (RER), 2009 WL 2500726, at *4 (E.D.N.Y. Aug. 4, 2009) (quoting

N.Y. Comp. Codes R. & Regs. tit. 12, § 137-2.2 and N.Y. Comp. Codes R. & Regs. tit.

12, § 137-2.1).  Defendants failed to notify Plaintiffs that any allowances might be

claimed against the minimum wage and did not maintain records that show the

allowances claimed.[19]  Defendants therefore should not receive the benefit of the New

York Labor Law tip credit.

    For these reasons, Exhibit A reflects each Plaintiff's claim for damages resulting

from Defendants' failure to comply with FLSA's and New York Labor Law's minimum

wage and overtime provisions based on the ordinary, statutorily prescribed minimum

wage and not the lower "tipped minimum wage."

    **C.      The Applicable Minimum Wage Should be the**
    **Higher of the Federal and State Minimum Wage**
    **for the Relevant Time Period**

    Plaintiffs assert that, in calculating damages arising from minimum wage,

overtime, and spread-of-hours violations, the applicable minimum wage should be the

federal or state minimum wage, whichever is higher at the relevant time.  The federal

minimum wage is intended to be a floor, not a ceiling.  See 29 U.S.C. § 218(a).  Thus, to

the extent state minimum wage levels exceeded federal levels at various times, such as

between January 1, 2005 through the commencement of this lawsuit on April 18, 2008,

---

[19] See supra n.17 (Defendants never gave Plaintiffs notice that they were being paid less than the
minimum wage because of the tips they earned); see, e.g., Plaintiffs' First Request for Production of
Documents & First Set of Interrogatories to Defendant Jian Li, dated March 23, 2009 ("Document Request
and Interrogatories") (Ex. 31), Request 14(b) ("Any and all Documents relating to … Plaintiffs' or other
employees compensation and tips received.").  While Defendants produced some documents relating to
Plaintiffs' compensation, Plaintiffs did not receive any statements listing allowances claimed as part of the
minimum wage.  (Yoon Decl. ¶ 5.)

state minimum wage levels should apply in calculating damages.  <u>See</u> 29 U.S.C. § 218(a)

(noting that no provision of FLSA "shall excuse noncompliance with any Federal or State

law or municipal ordinance establishing a minimum wage higher than the minimum wage

established under" FLSA); <u>Chan</u> 2007 WL 313483, at *25 (the FLSA wage incorporates

"the applicable New York minimum wage for all hours after January 1, 2005, when New

York's rate was increased above the federal minimum wage") (citing 29 U.S.C. §

218(a)); <u>Ke</u>, 595 F. Supp. 2d at 267-281 (adopting Plaintiffs' damages calculations,

which incorporated the higher New York minimum wage into the FLSA minimum

wage); Plaintiffs' Post-Trial Memorandum of Law in <u>Ke v. Saigon Grill</u>, dated July 11,

2009 pp. 11-12 (Ex. 36) (arguing that for purposes of calculating minimum wage

damages under FLSA, the court should incorporate the New York minimum wage when

greater than the federal minimum wage).[20]

> ### D.    Plaintiffs Are Entitled to Spread-of-Hours Compensation Under New York Labor Law in Addition to Federal or State Minimum Wage and Overtime Damages

New York Labor Law provides that any restaurant employee whose workday is

longer than ten hours "shall receive one hour's pay at the basic minimum hourly wage

rate before allowances, in addition to the minimum wage otherwise required."  N.Y.

Comp. Codes R. & Regs. tit. 12, § 137-1.7.  This "spread-of-hours" is defined as the

number of hours from the time an employee starts his workday until the time the

employee finishes his workday, including both working time and non-working time (<u>e.g.</u>,

---

[20] Plaintiffs request the opportunity to provide revised damage calculations should the Court decide not to incorporate the applicable New York minimum wage for all hours after January 1, 2005 and to apply instead the federal minimum wage for this period.

lunch breaks or off-time between split shifts).  Id.  § 137-3.11.  Both the regulations and cases make clear that an employee is entitled to an extra hour's pay irrespective of whether the employee's spread-of-hours includes non-working time.  See, e.g., Chan, 2007 WL 313483, at *21 (explaining that restaurant employees are entitled to spread-of-hours for each workday in which "(a) the spread-of-hours exceeds 10 hours; or (b) there is a split shift; or (c) both situations occur") (quoting N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4).

Courts have routinely concluded that, under New York law, plaintiffs can recover spread-of-hours wages in addition to their federal or state minimum wage and overtime claims.  See, e.g., Yang v. ACBL Corp., 427 F. Supp. 2d 327, 343 (S.D.N.Y. 2005) (plaintiffs recovered overtime and liquidated damages under FLSA and New York law, in addition to spread-of-hours damages); Liu v. Jen Chu Fashion Corp., No. 00 Civ. 4221 (RJH) (AJP), 2004 WL 33412 at *6 (S.D.N.Y. Jan. 7, 2004) (plaintiffs recovered overtime, liquidated damages under FLSA and New York law, and federal and state minimum wage damages, in addition to spread-of-hours damages.).

Although Plaintiffs routinely worked longer than ten hours per day, Defendants never paid these Plaintiffs the required spread-of-hours pay.  (Compl. ¶¶ 49-53.) Defendants have conceded that Plaintiffs worked more than ten hours a day (S. Li Dep. (Ex. 28) 59:19-61:16), that their wages were not calculated on an hourly basis (S. Li Dep. (Ex. 28) 104:10-20), and that Plaintiffs were not paid spread-of-hours compensation (S. Li Dep. (Ex. 28) 104:2-9; J. Li Dep. (Ex. 27) 190:4-6 (testifying that he is not familiar

with the concept of spread-of-hours pay)).[21]  Plaintiffs are therefore entitled to spread-of-hours compensation for each shift they worked at the Restaurants that exceeded ten hours, as set forth in Exhibit A.  For the same reasons set forth above, the higher of the federal and state minimum wage applicable to ordinary employees, not tipped employees, should be applied in calculating spread-of-hours damages.

> ### E.    Damage Computations for the Wage and Hour Violations and the Underlying Data Are Set Forth In the Attached Exhibits

In the attached Exhibit A, Plaintiffs set forth their wage and hour damages calculations by applying the above-referenced legal principles—that Plaintiffs are not covered by any "tipped employee" exception and are entitled to damages based on the higher of the federal or state minimum wage—in calculating Plaintiffs' minimum wage, overtime, and spread-of-hours damages.  As set forth in the declarations attached to the Yoon Declaration and the calculations in Exhibit A, each Plaintiff has testified regarding his or her hours and wages.  That testimony establishes that, with certain exceptions, most Plaintiffs tended to work from 60 to 75 hours per week at the Restaurants and were paid $300 to $750 hours per month, excluding tips, in wages.[22]  The Plaintiffs' testimony is corroborated by Defendant Susan Li.[23]

---

[21] See also Jin M. Cao Decl. (Ex. 8) ¶ 7; Li F. Li Decl. (Ex. 9) ¶ 7; Xian H. Zhuang Decl. (Ex. 10) ¶ 7; Min Gwee Decl. (Ex. 11) ¶ 6; Shi H. Chen (Ex. 12) ¶ 7; Shan X. Chen (Ex. 13) ¶ 7; Wen Z. Zhang (Ex. 14) ¶ 7; Quan Lin Decl. (Ex. 15) ¶ 6; Tang X. Li Decl. (Ex. 16) ¶ 7; Qi Weng Decl. (Ex. 17) ¶ 7; Lei Li Decl. (Ex. 18) ¶ 7; Zhen J. Weng Decl. (Ex. 7) ¶ 7; Yi Lin Decl. (Ex. 19) ¶ 7; Guo X. Wang Decl. (Ex. 4) ¶ 7; Qing L. Jiang Decl. (Ex. 20) ¶ 7; Yong Q. Lin Decl. (Ex. 21) ¶ 7; Zeng X. Huang Decl. (Ex. 22) ¶ 7; Yi L. Dong Decl. (Ex. 23) ¶ 7; Yi P. Wang Decl. (Ex. 5) ¶ 7; Guo H. Liu Decl. (Ex. 24) ¶ 7; Guo Y. Liu Decl. (Ex. 25) ¶ 7; Guo X. Liu Decl. (Ex. 26) ¶ 7; Teng Y. Chen Decl. (Ex. 6) ¶ 7; Yun H. Chi Decl. (Ex. 3) ¶ 7.

[22] But see supra n.4.

[23] (S. Li Dep. (Ex. 28) 59:19-60:7 (conceding that delivery workers worked six days per week, eleven hours per day); 60:8-61:6 (waiters worked approximately 66 hours per week); 61:23-62:13

**III.    BECAUSE THEY WERE PAID BELOW THE MINIMUM WAGE,
PLAINTIFFS ARE FURTHER ENTITLED TO THE RETURN
OF MONEY SPENT ON TOOLS OF THE TRADE, AS WELL
AS UNLAWFUL DEDUCTIONS TAKEN FROM THEIR TIPS**

**A.    Plaintiffs Are Entitled to Compensation for the Purchase
and Maintenance of Bicycles and Uniforms They Used
Primarily for the Benefit and Convenience of Their Employers**

Under FLSA, an employer must make payments "finally and unconditionally or

free and clear" in order to satisfy its minimum wage obligations.  29 C.F.R. § 531.35

(internal quotation marks omitted).  FLSA prohibits employers from requiring employees

to purchase the tools of their trade or give any money back to their employers, such that

employees' resulting compensation falls below the minimum wage.  Id.  Where an

employer fails to reimburse employees for employment-related expenses, it is "equivalent

to the employer paying for [those] expenses and then improperly deducting them from

the employees' pay. . . . This concept is known as a de facto deduction."  De Luna-

Guerrero v. The North Carolina Grower's Ass'n, 338 F. Supp. 2d 649, 656 (E.D.N.C.

2004); see also Arriaga v. Fla. Pac. Farms, L.L.C., 305 F.3d 1228, 1237 & n.11 (11th Cir.

2002).  Accordingly, if such expenses are borne by the employee, they are "deducted

from the cash wage to determine compliance with the FLSA minimum."  Rivera v. The

Brickman Group, Ltd., Civ. No. 05-1518, 2008 WL 81570, at *7 (E.D. Pa. Jan. 7, 2008).

Employment-related expenses that may not reduce an employee's wages below

the statutory minimum include "facilities" that are "primarily for the benefit or

convenience of the employer."  29 C.F.R. § 531.3(d)(1).  The U.S. Department of Labor

_____

(conceding that delivery workers earned between $600 and $750 per month); 62:19-63:3 (waiters earned
between $300 and 700 per month, depending on work experience).)

has found that "tools of the trade" are such items.  29 C.F.R. § 531.3(d)(2).  Specifically,

the regulations promulgated under FLSA state:

> If it is a requirement of the employer that the employee
> must provide tools of the trade which will be used in or are
> specifically required for the performance of the employer's
> particular work, there would be a violation of the Act in
> any workweek when the cost of such tools purchased by the
> employee cuts into the minimum or overtime wages
> required to be paid him under the Act.

29 C.F.R. § 531.35.[24]  Numerous courts have found that a transportation vehicle may be a

"tool of the trade."  See Ke, 595 F. Supp. 2d at 257-258  (holding that bicycles and motor

scooters were "tools of the trade" for restaurant delivery workers where the "primary role

of these men was to deliver hot meals to hungry and often impatient customers over a

large geographic expanse"); Brennan v. Modern Chevrolet Co., 363 F. Supp. 327, 333

(N.D. Tex. 1973), aff'd, 491 F.2d 1271 (5th Cir. 1974); see also Herman v. Express

Sixty-Minutes Delivery Services, Inc., 161 F.3d 299, 303 (5th Cir. 1998) ("[D]rivers

were required to purchase or lease all the necessary tools of the trade including a vehicle

[and] automobile insurance …").

Plaintiffs have established that delivery workers and waiters were required to

purchase "tools of the trade" and were not reimbursed for these costs.  Plaintiff delivery

workers were required to purchase bicycles, which were used and specifically required

for their delivery work.  (Compl. ¶¶ 61, 84.)[25]  Without a team of delivery workers riding

---

[24] Defendants' obligations under New York Labor Law are similar.  See N.Y. Comp. Codes R. &
Regs. tit. 12, § 137-2.5(b) ("The minimum wage shall not be reduced by expenses incurred by an employee
in carrying out duties assigned by his employer.").

[25] See also Li F. Li Decl. (Ex. 9) ¶ 14; Xian H. Zhuang Decl. (Ex. 10) ¶ 14; Shi H. Chen (Ex. 12) ¶
14; Shan X. Chen (Ex. 13) ¶ 14; Wen Z. Zhang (Ex. 14) ¶ 14; Tang X. Li Decl. (Ex. 16) ¶ 14; Qi Weng
Decl. (Ex. 17) ¶ 14; Lei Li Decl. (Ex. 18) ¶ 14; Zhen J. Weng Decl. (Ex. 7) ¶ 14; Guo X. Wang Decl. (Ex.

swiftly on bicycles, Defendants would not have been able to operate a take-out operation in New York City. Plaintiffs were not reimbursed for the costs of the bicycles or necessary repairs for those bicycles. (Compl. ¶ 61.)[26]

The U.S. Department of Labor has also determined that uniforms are "facilities" that are "primarily for the benefit or convenience of the employer." 29 C.F.R. § 531.3(d)(1). Thus, the "cost of uniforms and of their laundering, where the nature of the business requires the employee to wear a uniform," may not reduce an employee's wages below the statutory minimum. 29 C.F.R. § 531.3(d)(2). Plaintiff waiters were required to wear uniforms and to purchase most of the components of those uniforms, and were required to launder the uniforms regularly. (Compl. ¶ 62.)[27] Plaintiffs were not reimbursed for these costs. Id.[28]

Plaintiffs were paid below the minimum wage and therefore improperly required to bear the costs of bicycles, bicycle repairs, uniforms, and uniform maintenance. Exhibit

---

4) ¶ 14; Qing L. Jiang Decl. (Ex. 20) ¶ 14; Yong Q. Lin Decl. (Ex. 21) ¶ 14; Zeng X. Huang Decl. (Ex. 22) ¶ 14; Yi L. Dong Decl. (Ex. 23) ¶ 14; Yi P. Wang Decl. (Ex. 5) ¶ 14; Guo H. Liu Decl. (Ex. 24) ¶ 14; Guo Y. Liu Decl. (Ex. 25) ¶ 14; Guo X. Liu Decl. (Ex. 26) ¶ 14; Teng Y. Chen Decl. (Ex. 6) ¶ 14.

[26] See also Li F. Li Decl. (Ex. 9) ¶¶ 15-16; Xian H. Zhuang Decl. (Ex. 10) ¶¶ 15-16; Shi H. Chen (Ex. 12) ¶¶ 15-16; Shan X. Chen (Ex. 13) ¶¶ 15-16; Wen Z. Zhang (Ex. 14) ¶¶ 15-16; Tang X. Li Decl. (Ex. 16) ¶¶ 15-16; Qi Weng Decl. (Ex. 17) ¶¶ 15-16; Lei Li Decl. (Ex. 18) ¶¶ 15-16; Zhen J. Weng Decl. (Ex. 7) ¶¶ 15-16; Guo X. Wang Decl. (Ex. 4) ¶¶ 15-16; Qing L. Jiang Decl. (Ex. 20) ¶¶ 15-16; Yong Q. Lin Decl. (Ex. 21) ¶¶ 15-16; Zeng X. Huang Decl. (Ex. 22) ¶¶ 15-16; Yi L. Dong Decl. (Ex. 23) ¶¶ 15-16; Yi P. Wang Decl. (Ex. 5) ¶¶ 15-16; Guo H. Liu Decl. (Ex. 24) ¶¶ 15-16; Guo Y. Liu Decl. (Ex. 25) ¶¶ 15-16; Guo X. Liu Decl. (Ex. 26) ¶¶ 15-16; Teng Y. Chen Decl. (Ex. 6) ¶¶ 15-16.

[27] See also Jin M. Cao Decl. (Ex. 8) ¶ 14; Min Gwee Decl. (Ex. 11) ¶ 14; Quan Lin Decl. (Ex. 15) ¶ 14.

[28] See also Jin M. Cao Decl. (Ex. 8) ¶¶ 15-16; Min Gwee Decl. (Ex. 11) ¶¶ 15-16; Quan Lin Decl. (Ex. 15) ¶¶ 15-16.

A sets forth Plaintiffs' expenses in this regard, which Defendants owe to Plaintiffs as damages.[29]

**B.     Plaintiffs Are Entitled to the Return of Unlawful Deductions Made By the Defendants From Plaintiffs' Tips**

New York law does not permit employers to deduct amounts from an employee's wages unless those deductions or payments are (a) "made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency," or (b) "expressly authorized in writing by the employee and are for the benefit of the employee."  N.Y. Lab. Law § 193(1).  New York law further prohibits an employer or his agent from demanding or accepting, "directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity or of any charge purported to be a gratuity for an employee."  N.Y. Lab. Law § 196-d.

Similarly, under FLSA, employers may not require that their employees give any money back to them, such that employees' resulting compensation falls below the minimum wage.  See 29 C.F.R. § 531.35.  FLSA's requirement that wages be paid "free and clear" means that any money an employee "'kicks back' directly or indirectly to the employer or another person for the employer's benefit" must be excluded from calculation of the employee's wages.  29 C.F.R. § 531.35.  Moreover, FLSA provides that an employee must retain all tips in order for his employer to claim the tip credit.  29 U.S.C. § 203(m); see supra II.B.

---

[29] The rates for expenses related to dry cleaning used in Exhibit A are based upon those set by the New York Department of Labor.  See N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.8.

Here, Defendants made two types of unlawful deductions from the Plaintiffs' tips in violation of New York Labor Law and FLSA. First, until May 2007, Defendants withheld 10 percent of all tips received on credit cards from delivery workers and waiters. (Compl. ¶ 59.)[30] Defendants concede this deduction. (S. Li Dep. (Ex. 28) 72:23-78:3; J. Li Dep. (Ex. 27) 22:21-24:3.) Defendants may be entitled to deduct, from Plaintiffs' credit card tips, the same percentage that Defendants pay as a processing fee to third party credit card processors. See August 15, 1994 New York State Department of Labor Opinion Letter (Ex. 32); September 2, 1994 New York State Department of Labor Opinion Letter (Ex. 33); New York State Department of Labor Division of Labor Standards, Guidelines For Investigators: Minimum Wage Order For Restaurant Industry, Effective January 1, 1987 (Ex. 34). However, Defendants concede that their credit card processing fee was well below 10 percent, although Plaintiffs have been unable to determine the exact amount. (J. Li Dep. (Ex. 27) 161:17-163:12 (stating that the processing fee is "[s]omewhere around 2 percent"); S. Li Dep. (Ex. 28) 77:9-78:13 (noting that the range of fee rates is "[t]hree to five percent").)[31] Indeed, three percent appears to be the industry norm; in a similar litigation, documents established that three

---

[30] See also Jin M. Cao Decl. (Ex. 8) ¶ 12; Li F. Li Decl. (Ex. 9) ¶ 12; Xian H. Zhuang Decl. (Ex. 10) ¶ 12; Min Gwee Decl. (Ex. 11) ¶ 12; Shi H. Chen (Ex. 12) ¶ 12; Shan X. Chen (Ex. 13) ¶ 12; Wen Z. Zhang (Ex. 14) ¶ 12; Quan Lin Decl. (Ex. 15) ¶ 12; Tang X. Li Decl. (Ex. 16) ¶ 12; Qi Weng Decl. (Ex. 17) ¶ 12; Lei Li Decl. (Ex. 18) ¶ 12; Zhen J. Weng Decl. (Ex. 7) ¶ 12; Yi Lin Decl. (Ex. 19) ¶ 12; Guo X. Wang Decl. (Ex. 4) ¶ 12; Qing L. Jiang Decl. (Ex. 20) ¶ 12; Yong Q. Lin Decl. (Ex. 21) ¶ 12; Zeng X. Huang Decl. (Ex. 22) ¶ 12; Yi L. Dong Decl. (Ex. 23) ¶ 12; Yi P. Wang Decl. (Ex. 5) ¶ 12; Guo H. Liu Decl. (Ex. 24) ¶ 12; Guo Y. Liu Decl. (Ex. 25) ¶ 12; Guo X. Liu Decl. (Ex. 26) ¶ 12; Teng Y. Chen Decl. (Ex. 6) ¶ 12.

[31] See also Document Request and Interrogatories (Ex. 31), Interrogatory 7 (asking Defendants to identify "Persons with knowledge of or responsibility for the use, processing, or calculation of credit card sales—including credit card processing fees or other charges—at the Restaurants."). Defendants did not provide a response to Plaintiffs' interrogatory identifying an individual, by name, with actual knowledge of or responsibility for the use, processing, or calculation of credit card sales at the Restaurants. (Yoon Decl. ¶ 6.)

percent was the approximate fee paid by a New York Chinese restaurant defendant. (Yoon Decl. ¶ 44; Ex. 35 (copy of a contract between a New York City Chinese restaurant and a credit card processing company obtained from a similar litigation).) For these reasons, Plaintiffs have used a three percent processing fee for the purpose of calculating damages arising from Defendants' gratuities violations.[32]

Second, Defendants unlawfully required waiters to remit 12 to 15 percent of all tips they received. (Compl. ¶ 60; J. Li Dep. (Ex. 27) 128:17-131:7; S. Li Dep. (Ex. 28) 78:14-85:18; Transcript of June 24, 2009 Deposition of Jin M. Cao ("Cao Dep.") (Ex. 30) 13:10-14:6, 16:20-17:7.)[33] Defendant Susan Li asserted that she did not retain the "pooled tips" but gave them to the busboys. (S. Li Dep. (Ex. 28) 79:4-80:6, 83:2-84:19.) However, she conceded that she used these deductions from waiters' pooled tips to pay the busboys' wages, thus impermissibly transferring money from waiters to busboys to support the busboys' base pay. See Hai Ming Lu v. Jing Fong Restaurant, Inc., 503 F. Supp. 2d 706, 710-11 (S.D.N.Y. 2007); Chan, 2007 WL 313483, at *4-5, 18. Moreover, Defendants often failed to distribute these amounts to the busboys. (Compl. ¶ 60; Cao Dep. (Ex. 30) 13:10-21:20, 23:22-25:9, 26:19-28:5.)

---

[32] As set forth in Exhibit A, with respect to calculating the amount owed to Plaintiff delivery workers as a result of the unlawful deduction of 10% of all credit card tips, Plaintiffs' recollections of the percentage of total tips that were paid for with credit cards varied. As a result, for purposes of calculating a reasonable estimate of the percentage of tips paid for with credit cards and subjected to unlawful deductions, Plaintiffs have used 45%, which represents the average of Plaintiffs' recollections, as the percentage of tips that were paid for with a credit card.

[33] See also Jin M. Cao Decl. (Ex. 8) ¶ 14; Min Gwee Decl. (Ex. 11) ¶ 13; Quan Lin Decl. (Ex. 15) ¶ 13. This deduction was made after the 10 percent credit card processing deduction. (Jin M. Cao Decl. (Ex. 8) ¶ 13; Min Gwee Decl. (Ex. 11) ¶ 12; Quan Lin Decl. (Ex. 15) ¶ 12.) A 12% deduction was taken from all tips until July 1, 2007, at which time Defendants began taking a 15% deduction from all waiters' tips.

Plaintiffs are entitled to the return of each of these unlawful deductions. Exhibit

A sets forth the approximate tips that Plaintiffs earned, based on their testimony, and

calculates the damages they are owed due to the Defendants' deductions from those tips.

## IV.   PLAINTIFFS ARE ENTITLED TO LIQUIDATED DAMAGES UNDER BOTH STATE AND FEDERAL LAW AND PREJUDGMENT INTEREST UNDER STATE LAW

### A.   FLSA Liquidated Damages

An employer who violates FLSA is liable for the unpaid wages and an additional

equal amount as liquidated damages. 29 U.S.C. § 216(b). The employer may not be

liable for liquidated damages if it demonstrates that its actions were in good faith and that

it had reasonable grounds for believing its actions or omissions did not violate FLSA. 29

U.S.C. § 260. The Second Circuit has explained that "the employer bears the burden of

establishing, by plain and substantial evidence, subjective good faith and objective

reasonableness. . . . The burden, under 29 U.S.C. § 260, is a difficult one to meet,

however, and double damages are the norm, single damages the exception." S. New Eng.

Telecomms. Corp., 121 F.3d at 71 (citations and internal quotation marks omitted); see

also Brock v. Wilamowsky, 833 F.2d 11, 20 (2d Cir. 1987) ("The Act does not authorize

the court to decline to award liquidated damages, in whole or in part, unless the employer

has established its good-faith, reasonable-basis defense.").

Plaintiffs are entitled to liquidated damages under FLSA. Defendants defaulted

on the allegations in the Complaint, including those of lack of good faith. (Compl. ¶¶ 43,

48, 53, 64, 66, 69, 70, 74, 77, 81, 85, 90.) Accordingly, they have failed to meet their

burden of establishing good faith. Indeed, Defendants failed to raise the affirmative

defense of good faith in their answer, which constitutes a "waiver of that defense and its

exclusion from the case." United States on behalf of Mar. Admin. v. Cont'l Ill. Nat'l Bank & Trust Co., 889 F.2d 1248, 1253 (2d Cir. 1989) (citation and internal quotation marks omitted).

Moreover, "to establish good faith, the employer must take active steps to ascertain the dictates of the FLSA and then act to comply with them." Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999). "Ignorance of FLSA requirements is insufficient to establish good faith …" Tlacoapa v. Carregal, 386 F. Supp. 2d 362, 368 (S.D.N.Y. 2005); accord Pavia v. Around the Clock Grocery, Inc., No. 03 CV 6465 (ERK), 2005 WL 4655383, at *7 (E.D.N.Y. Nov. 15, 2005).

Even if Defendants had pled good faith as an affirmative defense and not defaulted on Plaintiffs' allegations that they willfully violated FLSA, Defendants' own deposition testimony confirms that they failed to act in good faith. Defendants concede that they did not attempt to learn about the requirements of FLSA until at least March 2008, shortly before this litigation was filed. (S. Li Dep. (Ex. 28) 32:22-33:7; J. Li Dep. (Ex. 27) 41:12-41:18, 122:20-123:4, 123:10-124:8.) Indeed, even after the Defendants supposedly learned of their obligations under federal and state minimum wage laws, they failed to take steps to ensure that their employees were paid in accordance with those laws. (J. Li Dep. (Ex. 27) 131:3-7 (testifying that he did not know, as of August 2009, whether the busboys at the Restaurants currently received wages at or above the minimum wage), 189:20-190:6 (testifying that he did not know, as of August 2009, about the spread-of-hours requirements of New York Labor Law).) Defendants failed to notify Plaintiffs of their rights. Susan Li testified that the first time she posted a notice was in 2008 at the earliest. (S. Li Dep. (Ex. 28) 109:10-111:3.) Even then, Defendants failed to

post notices in Chinese, the only language Plaintiffs can read. (Compl. ¶ 72; S. Li Dep. (Ex. 28) 113:10-22.)[34] To the extent that Defendants profess ignorance as to the minimum wage and overtime laws before the lawsuit was filed, they cannot demonstrate that, notwithstanding this ignorance, they nevertheless also had an objectively reasonable belief that they were in compliance with the law. Accordingly, Plaintiffs are entitled to liquidated damages under FLSA.

### B. New York Labor Law Liquidated Damages

New York Labor Law allows a worker to recover 25 percent of his unpaid wages as liquidated damages where his employer's violation was willful. N.Y. Lab. Law §§ 198(1-a), 663(1). A willful violation is one where "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." McLaughlin, 486 U.S. at 133.

Defendants have defaulted on Plaintiffs' allegations that Defendants acted willfully. (Compl. ¶¶ 38, 41, 43, 48, 53, 64, 66, 69, 70-74, 76, 80, 84, 88); see also supra Section I.B. Further, as noted, Defendants made no effort to determine whether their pay practices complied with FLSA and New York Labor Law until shortly before the complaint was filed. (S. Li Dep. (Ex. 28) 32:22-33:7; J. Li Dep. 41:12-41:18, 112:20-114:10, 145:9-145:12; Transcript of June 24, 2009 Deposition of Xian H. Zhuang

---

[34] See also Jin M. Cao Decl. (Ex. 8) ¶ 19; Li F. Li Decl. (Ex. 9) ¶ 16; Xian H. Zhuang Decl. (Ex. 10) ¶ 16; Min Gwee Decl. (Ex. 11) ¶ 18; Shi H. Chen (Ex. 12) ¶ 16; Shan X. Chen (Ex. 13) ¶ 16; Wen Z. Zhang (Ex. 14) ¶ 16; Quan Lin Decl. (Ex. 15) ¶ 18; Tang X. Li Decl. (Ex. 16) ¶ 16; Qi Weng Decl. (Ex. 17) ¶ 16; Lei Li Decl. (Ex. 18) ¶ 16; Zhen J. Weng Decl. (Ex. 7) ¶ 16; Yi Lin Decl. (Ex. 19) ¶ 17; Guo X. Wang Decl. (Ex. 4) ¶ 16; Qing L. Jiang Decl. (Ex. 20) ¶ 16; Yong Q. Lin Decl. (Ex. 21) ¶ 16; Zeng X. Huang Decl. (Ex. 22) ¶ 16; Yi L. Dong Decl. (Ex. 23) ¶ 16; Yi P. Wang Decl. (Ex. 5) ¶ 16; Guo H. Liu Decl. (Ex. 24) ¶ 16; Guo Y. Liu Decl. (Ex. 25) ¶ 16; Guo X. Liu Decl. (Ex. 26) ¶ 16; Teng Y. Chen Decl. (Ex. 6) ¶ 16; Yun H. Chi Decl. (Ex. 3) ¶ 10.

("Zhuang Dep.") (Ex. 29) 44:23-46:10, 49:15-22.)  Indeed, as late as August 7, 2009, when Defendant Jian Li was deposed in this case, he still had not taken steps to ensure that the Restaurants were in compliance with overtime or spread-of-hours laws.  (J. Li Dep. (Ex. 27) 189:20-190:6.)  To the extent Defendants claim ignorance of the federal and state wage and hour laws, despite their many years in the restaurant industry,[35] such professed ignorance amounts to reckless disregard sufficient to establish a willful violation.  See RSR Sec. Servs., 172 F.3d at 141-42.  Accordingly, Plaintiffs are entitled to liquidated damages under New York law.

### C. Plaintiffs Are Entitled to Both FLSA and New York Labor Law Liquidated Damages

Plaintiffs may be awarded liquidated damages under both FLSA and New York Labor Law for the same time periods because these damages, though sharing the same name, serve fundamentally different purposes.  See Ke, 595 F. Supp. 2d at 260-262; 67 Nail Plaza, 2008 WL 2676598, at *2-4  (granting FLSA liquidated damages and New York Labor Law liquidated damages for wage-and-hour violations); see also Renteria v. Italia Foods, Inc., No. 02 C 495, 2003 WL 21995190, at *4-5 (N.D. Ill. Aug. 21, 2003) (holding that plaintiffs are entitled to liquidated damages under FLSA and, if they are able to prove willfulness at trial, will also be entitled to liquidated damages under state law).

Liquidated damages under FLSA are the functional equivalent of prejudgment interest; they are "not a penalty exacted by the law, but rather compensation to the employee occasioned by the delay in receiving wages due caused by the employer's

---

[35] See J. Li Dep. (Ex. 27) 13:24-14:16; S. Li Dep. (Ex. 28) 17:14-18:3, 21:3-16.

violation of the FLSA." <u>RSR Sec. Servs.</u>, 172 F.3d at 142; <u>see also</u> <u>S. New Eng.</u>

<u>Telecomms. Corp.</u>, 121 F.3d at 71 ("Liquidated damages under the FLSA are considered

compensatory rather than punitive in nature.").  The compensatory nature of FLSA

liquidated damages is further underlined by the allocation of the burden of proof to the

defendant, who must make an affirmative showing of good faith to avoid liability.

<u>Wilamowsky</u>, 833 F.2d at 19.

Liquidated damages under New York Labor Law, by contrast, are punitive in

nature; they "'constitute a penalty' to deter an employer's willful withholding of wages

due." <u>Reilly v. NatWest Mkts. Group, Inc.</u>, 181 F.3d 253, 265 (2d Cir. 1999) (quoting

<u>Carter v. Frito-Lay, Inc.</u>, 425 N.Y.S.2d 115, 116, 74 A.D.2d 550, 551 (1st Dep't 1980)).

The calculations for liquidated damages for each Plaintiff set forth in Exhibit A reflect:

(1) FLSA liquidated damages, covering the entirety of Plaintiffs' employment, based

upon damages arising from minimum wage and overtime pay violations, unlawful

deductions for the purchase and maintenance of bicycles and uniforms, and unlawful

gratuities deductions; and (2) New York Labor Law liquidated damages, covering the

entirety of Plaintiffs' employment, based upon damages arising from the same violations,

as well as from spread-of-hours violations.

**D.      Plaintiffs are Entitled to Prejudgment Interest Under New York Law**

Plaintiffs are also entitled to prejudgment interest, at a statutory rate of 9 percent,

on any award of damages under New York Labor Law for which Plaintiffs will not also

receive liquidated damages under FLSA—namely, their spread-of-hours damages.  <u>See</u>

N.Y. C.P.L.R. §§ 5001, 5004; <u>see</u> <u>Brooklyn Sav. Bank v. O'Neil</u>, 324 U.S. 697, 715

(1945).  Plaintiffs' damages calculations include prejudgment interest for the length of

each Plaintiff's employment until the date of the filing of the complaint through

December 11, 2009.[36]  Plaintiffs respectfully request an opportunity, in the event that a

judgment is rendered in their favor, to submit additional papers to aid in the computation

of prejudgment interest.

## V.     JIAN LI AND SUSAN LI ARE EMPLOYERS AND THUS PERSONALLY LIABLE FOR PLAINTIFFS' UNPAID WAGES

FLSA and New York Labor Law both impose personal liability on employers for

wage and hour violations.  See Ansoumana v. Gristede's Operating Corp., 255 F. Supp.

2d 184, 192 (S.D.N.Y. 2003); Chan, 2007 WL 313483, at *84 (holding that the

defendants, who were owners, officers and managers, were individually and jointly

responsible for federal and state law violations); Wong v. Yee, 262 A.D.2d 254, 255, 693

N.Y.S.2d 536 (1st Dep't 1999) (overturning the trial court's dismissal of Labor Law

claims because there was an issue of fact as to whether the defendant shareholders could

also be liable as employers).  Under FLSA, the definition of an "employer" who may be

held personally liable includes "any person acting directly or indirectly in the interest of

an employer in relation to an employee."[37]  29 U.S.C. § 203(d).  This definition of

"employer" is to be broadly construed.  See RSR Sec. Servs., 172 F.3d at 139.  FLSA

permits more than one person to be held liable as an employer, see Falk v. Brennan, 414

U.S. 190, 195 (1973), and it does not matter that an individual "may have shared or

---

[36] For purposes of this Memorandum and the accompanying damages calculations found in Exhibit A, Plaintiffs have utilized December 11, 2009, the next scheduled conference date in this matter, as the estimated date of judgment.

[37] See also Jiao v. Chen, No. 03 Civ. 0165 (DF), 2007 WL 4944767, at *9 n.12 (S.D.N.Y. Mar. 30, 2007) ("[C]ourts have interpreted the definition of 'employer' under New York Labor Law coextensively with the definition used by the FLSA.").

delegated operational control to other[s] … or exercised that control infrequently," <u>Moon v. Kwon</u>, 248 F. Supp. 2d 201, 237 (S.D.N.Y 2002).

The Second Circuit employs an "economic reality" test to determine whether a defendant is an employer for FLSA purposes. <u>RSR Sec. Servs.</u>, 172 F.3d at 139. The court examines whether the defendant has the power to hire and fire the employees, supervises or controls employee work schedules or conditions of employment, determines the rate and method of payment, or maintains employment records. <u>Id.</u> This list is neither exclusive nor exhaustive, as a defendant need not satisfy any particular factor or all the above factors to qualify as an employer; no one factor is dispositive, and any other relevant factor may also be considered. <u>See</u> <u>Zheng v. Liberty Apparel Co.</u>, 355 F.3d 61, 71 (2d Cir. 2003).

Plaintiffs have alleged that Defendants Jian Li and Susan Li were "employers" and therefore are personally liable for the Plaintiffs' damages. (Compl. ¶¶ 17-20.)[38] Pursuant to the Default Order, these allegations are deemed admitted. Defendants' testimony further confirms their status as Plaintiffs' employers under FLSA and New York Labor Law. (J. Li Dep. (Ex. 27) 30:25-31:15, 128:13-16, 129:20-23; S. Li Dep. (Ex. 28) 17:14-18:3, 21:3-16, 29:23-30:16, 33:8-34:11, 34:12-37:10.)

Therefore, the damages for each of the individual Defendants set forth in Exhibit A are based upon the periods during which each served as an "employer." Jian Li was an

---

[38] <u>See also</u> Jin M. Cao Decl. (Ex. 8) ¶ 4; Li F. Li Decl. (Ex. 9) ¶ 4; Xian H. Zhuang Decl. (Ex. 10) ¶ 4; Min Gwee Decl. (Ex. 11) ¶ 4; Shi H. Chen (Ex. 12) ¶ 4; Shan X. Chen (Ex. 13) ¶ 4; Wen Z. Zhang (Ex. 14) ¶ 4; Quan Lin Decl. (Ex. 15) ¶ 4; Tang X. Li Decl. (Ex. 16) ¶ 4; Qi Weng Decl. (Ex. 17) ¶ 4; Lei Li Decl. (Ex. 18) ¶ 4; Zhen J. Weng Decl. (Ex. 7) ¶ 4; Yi Lin Decl. (Ex. 19) ¶ 4; Guo X. Wang Decl. (Ex. 4) ¶ 4; Qing L. Jiang Decl. (Ex. 20) ¶ 4; Yong Q. Lin Decl. (Ex. 21) ¶ 4; Zeng X. Huang Decl. (Ex. 22) ¶ 4; Yi L. Dong Decl. (Ex. 23) ¶ 4; Yi P. Wang Decl. (Ex. 5) ¶ 4; Guo H. Liu Decl. (Ex. 24) ¶ 4; Guo Y. Liu Decl. (Ex. 25) ¶ 4; Guo X. Liu Decl. (Ex. 26) ¶ 4; Teng Y. Chen Decl. (Ex. 6) ¶ 4; Yun H. Chi Decl. (Ex. 3) ¶ 4.

employer at both restaurants beginning on or about August 1, 2001. Susan Li was an employer at the Lexington Avenue restaurant, starting from January 1, 2003, and at the 86th Street restaurant, beginning in January 1, 2006. See supra n.5.

## VI.    PLAINTIFFS ARE ENTITLED TO ATTORNEYS' FEES AND COSTS

As the prevailing party due to Defendants' default, Plaintiffs' counsel are seeking attorneys' fees at the customary rate for practitioners in the area of wage-and-hour litigation and costs.[39] See 29 U.S.C. § 216(b); N.Y. Lab. Law §§ 198(1-2), 663(1).

The method of calculation used by courts in this circuit to determine attorneys' fees awards—the "lodestar method"—multiplies the number of hours reasonably worked by a reasonable hourly rate. Hours are reasonably expended if, "at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Cesario v. BNI Construction, Inc., No. 07 Civ. 8545 (LLS) (GWG), 2008 U.S. Dist. LEXIS 103155, at * 19 (Dec. 15, 2008) (quoting Grant v. Martinez, 973 F.2d 96, 99 (2d. Cir. 1992)). In determining a reasonable hourly rate, a court should look to "the prevailing hourly rate in the district where it sits," but also may consider "what a reasonable, paying client would be willing to pay" and other case-specific factors such as the complexity and time demands of the case. Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 184 (2d Cir. 2007, amended Apr. 10, 2008). The court should use the same calculation even if the attorneys are from non-profit organizations or from private law firms engaged in pro bono work. Id. at 184

---

[39] Any attorneys' fees awarded to and collected by Davis Polk for its services in this case will be donated to a charitable, non-profit organization exempt from taxation under 26 U.S.C. § 501(c)(3). (Windels Decl. ¶ 4.)

n.2 (citing <u>Blum v. Stenson</u>, 465 U.S. 886, 894 (1984)).  There is a strong presumption that the lodestar amount is reasonable, although a court may use its discretion to adjust that amount depending on the circumstances of the case, "including in particular the results obtained."  <u>Quarantino v. Tiffany & Co.</u>, 166 F.3d 422, 425 (2d Cir. 1999) (internal quotation marks omitted).

For several reasons, the attorneys fees for which Plaintiffs seek compensation, as set forth in the accompanying Declaration of James H. R. Windels ("Windels Decl."), are appropriate.[40]  First, the attorney and legal assistant hours for which Plaintiffs seek compensation are reasonable.  Plaintiffs are only seeking fees for the period from October 1, 2008 through and including October 8, 2009, as Defendants did not begin actively defending this action until September 2008 and defaulted on October 8, 2009.  (Windels Decl. ¶ 7. )

In addition, the work performed by Plaintiffs' counsel in this matter was substantial.  Among other things, Plaintiffs' counsel conducted necessary legal research and factual investigations (involving twenty six plaintiffs and multiple defendants), engaged in settlement negotiations, conducted substantial discovery, and prepared for trial, which was cancelled five days before it was scheduled to commence.  (Windels Decl. ¶ 9.)

Second, the rates requested by Plaintiffs for these attorneys and legal assistants are reasonable.  These rates—$400 for partners, $350 for litigation counsel, $300 for associates with three to seven years experience and $200 for associates with one to two

---

[40] Further documentation in support of Plaintiffs' claim for fees is set forth in the Declaration of Kenneth Kimerling dated November 4, 2009 ("Kimerling Decl."), and the accompanying exhibits.

years experience—are consistent with rates used in other cases involving attorney fee awards to large New York firms on pro bono matters.  See, e.g., Chan v. Sung Yue Tung Corp., No. 03 Civ. 6048 (GEL), 2007 WL 1373118, at *3-5 (S.D.N.Y. May 8, 2007) ("Chan II")  (in a case brought under FLSA and New York Labor law by pro bono attorneys, holding that rates of $450/hour for a partner, $300/hour for mid-level to senior associates, $200 for post-admission associates with less than two years' experience, and a range of $50-100/hour for paralegal services were reasonable).  These rates are also well below Davis Polk's standard billing rates.  (Windels Decl. ¶ 9.)  Accordingly, Plaintiffs seek $327,480.00 in legal fees for the work of Davis Polk and $7,665 in legal fees for the work of Kenneth Kimerling.[41]

Finally, the small amount ($6,184.08) of costs sought by Plaintiffs are also reasonable.  Plaintiffs are entitled to recover "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients."  LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998).  Here, Plaintiffs are only seeking costs related to court filings, transcription services and interpreter/translator fees in the amount of $6,184.08.  See Chan II, 2007 WL 1373118, at * 9 (awarding costs of $59,732.54).  Certain costs for which we are ordinarily reimbursed have been excluded.  (Windels Decl. ¶ 14.)

---

[41] As set forth in the Declaration of Kenneth Kimerling, Mr. Kimerling seeks fees at a rate of $350 per hour, which are reasonable in light of his experience and awards given to attorneys with similar experience in similar cases.  (Kimerling Decl. ¶¶ 3-4.)

**CONCLUSION**

The authorities and evidence cited above demonstrate that each Defendant is liable to each Plaintiff, as set forth in the attached damages calculations. As set forth in Exhibit A, the Windels Decl., and the Kimerling Decl., Plaintiffs respectfully request that the Court award Plaintiffs $2,000,617.13 in damages and $341,329.08 in attorneys' fees and costs. A total of $1,283,138.36 of the damages is attributable to Defendant Susan Li; $1,738,149.15 is attributable to Defendant Jian Li; and the entire $2,000,617.13 is attributable to Defendants Wu Liang Ye Lexington Restaurant, Inc., Wu Liang Ye 86 Restaurant, Inc., and Wu Liang Ye U.S.A., Inc.

Dated:  New York, New York
        November 4, 2009

                      DAVIS POLK & WARDWELL LLP

                      By:   /s/ Jane H. Yoon
                             Jane H. Yoon
                             Russell Capone
                             Brooke A. Russakoff
                             Deepika Bains

                      450 Lexington Avenue
                      New York, New York 10017
                      (212) 450-4000

                      Kenneth Kimerling
                      Asian American Legal Defense and
                      Education Fund
                      99 Hudson Street
                      New York, New York 10038
                      (212) 966-5932

                      *Attorneys for Plaintiffs*