UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| JIN M. CAO, LI F. LI, XIAN H. ZHUANG, GWEE MIN, SHI H. CHEN, SHAN X. CHEN, ZHANG W. ZHANG, QUAN LIN, TANG X. LI, YUN H. CHI, QI WENG, LEI LI, ZHEN J. WENG, YI LIN, GUO X. WANG, QING L. JIANG, YONG Q. LIN, ZENG X. HUANG, YI L. DONG, YI P. WANG, GUO H. LIU, GUO T. LIU, QUAN Z. LI, GUO X. LIU, TENG Y. CHEN, and GENG D. WENG, | : : : : : : : : : : | No. 08 Civ. 3725 (DC)(HP) |
| Plaintiffs, | : : | |
| - against - | : : | ECF CASE |
| WU LIANG YE LEXINGTON RESTAURANT, INC., WU LIANG YE 86 RESTAURANT, INC., WU LIANG YE U.S.A., INC., JIAN LI, a.k.a. JAMES LI, SUSAN LI, STEVEN LO, JOHN ZHONG, and TOM TAN, | : : : : : : : | |
| Defendants. | : : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## REPLY MEMORANDUM OF LAW IN SUPPORT
## OF PLAINTIFFS' APPLICATION FOR DAMAGES

DAVIS POLK & WARDWELL, LLP
450 Lexington Avenue
New York, New York 10017

ASIAN AMERICAN LEGAL DEFENSE
  AND EDUCATION FUND
99 Hudson Street
New York, New York 10038

*Attorneys for Plaintiffs*

December 11, 2009

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT .........................................................................................................................3

I.   DEFENDANTS ACTED WILLFULLY AND THEREFORE OWE PLAINTIFFS
     LIQUIDATED DAMAGES ........................................................................................3

II.  DEFENDANTS FAIL TO DISPUTE THAT THE FLSA AND NEW YORK
     LABOR LAW STATUTES OF LIMITATIONS SHOULD BE EQUITABLY
     TOLLED FOR THE ENTIRETY OF PLAINTIFFS' EMPLOYMENT ............................6

III. DEFENDANTS JIAN LI AND SUSAN LI ARE PERSONALLY LIABLE FOR
     PLAINTIFFS' UNPAID WAGES ...............................................................................8

     A.   Jian Li is Responsible for Unpaid Wages for the Entire Period of His Role
          as Manager ......................................................................................................8

     B.   Susan Li is Responsible for Unpaid Wages for the Entire Period of Her
          Role as Manager .............................................................................................10

IV.  PLAINTIFFS' DAMAGES CLAIMS FOR BICYCLE AND UNIFORM
     PURCHASES ARE REASONABLE ...........................................................................11

V.   PLAINTIFFS' COUNSELS' HOURS WERE CONTEMPORANEOUSLY
     RECORDED AND ARE RELEVANT AND REASONABLE ........................................13

CONCLUSION ......................................................................................................................16

## TABLE OF AUTHORITIES

P<small>AGE</small>

**Cases**

Ayres v. 127 Restaurant Corp., 12 F. Supp. 2d 305 (S.D.N.Y. 1998)......................................... 4, 13

Cerbone v. Int'l Ladies' Garment Workers' Union, 768 F.2d 45 (2d Cir. 1985) ........................... 7

Chan v. Sung Yue Tung Corp., No. 03 Civ. 6048 (GEL), 2007 WL 1373118 (S.D.N.Y. May 8, 2007)................................................................................................................. 13

Chung v. New Silver Palace Rest., Inc., 246 F. Supp. 2d 220 (S.D.N.Y. 2002) .................... 11, 15

Dong v. CCW Fashion Inc., Nos. 06 Civ. 4973, 07 Civ. 9741, 2009 WL 884680 (S.D.N.Y. Feb. 19, 2009)................................................................................................. 4

Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155 (2d Cir. 1992)............. 3, 8

Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132 (2d Cir. 1999)........................................... 5, 9, 10

Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240 (S.D.N.Y. 2008) .................................................. 12

Lu v. Jing Fong Restaurant, Inc., 503 F. Supp. 2d 706 (S.D.N.Y. 2007) ..................................... 13

McLaughlin v. Richland Shoe Co., 486 U.S. 128 (1988)................................................................ 4

Mendez v. Nooch, Inc., No. 07 Civ. 11174, 2009 WL 666771 (S.D.N.Y. Mar. 6, 2009).......... 3, 8

Moon v. Kwon, 248 F. Supp. 2d 201 (S.D.N.Y. 2002) ................................................................... 9

Pearson Ed., Inc., v. Kumar, No. 07 Civ. 9399-CSH, 2008 WL 4891252 (S.D.N.Y. Nov. 12, 2008) ............................................................................................................................ 1

Tlacoapa v. Carregal, 386 F. Supp. 2d 362 (S.D.N.Y. 2005) ........................................................ 5

United States v. Sabhnani, 566 F. Supp. 2d 139 (E.D.N.Y. 2008) ................................................. 7

**Statutes and Rules**

29 C.F.R. § 516.4 ............................................................................................................................ 7

29 C.F.R. § 531.3(d)(2)................................................................................................................. 11

29 C.F.R. § 531.35 .................................................................................................................. 11, 15

29 U.S.C. § 203(m) ....................................................................................................................... 15

29 U.S.C. § 216(b) ........................................................................................................... 4

29 U.S.C. § 255(a) ........................................................................................................... 8

29 U.S.C. § 260 ............................................................................................................... 4

N.Y. Bus. Corp. Law § 630 ........................................................................................... 14

N.Y. Lab. Law § 198-d ................................................................................................. 15

N.Y. Lab. Law §§ 198(1-a) ............................................................................................. 4

Plaintiffs respectfully submit this Reply Memorandum of Law in Support of Plaintiffs' Application for Damages dated November 4, 2009 (the "Opening Memorandum") and in opposition to the Declarations submitted by Defendants Jian Li and Susan Li ("Defendants") on November 25, 2009 (the "J. Li Decl." and the "S. Li Decl.").[1]

## PRELIMINARY STATEMENT

In the Opening Memorandum and supporting exhibits, Plaintiffs established that they were entitled to $2,000,617.13 in damages for (1) Defendants' violations of minimum wage, overtime, and spread-of-hours pay laws under the Fair Labor Standards Act ("FLSA") and New York Labor Law; (2) Defendants' unlawful wage deductions related to Plaintiffs' purchases and maintenance of bicycles and uniforms; (3) Defendants' unlawful deductions from Plaintiffs' gratuities; (4) liquidated damages; and (5) prejudgment interest on Plaintiffs' spread-of-hours damages.  Plaintiffs also established that they were entitled to $335,145.00 in substantially-reduced attorneys' fees and $6,184.08 in substantially-reduced costs.  Defendants do little to challenge these damages assertions.

Most importantly, Defendants' Declarations do not challenge the wages that each Plaintiff states he or she earned or the hours that each Plaintiff states he or she worked. In addition, Defendants do not challenge the amounts in tips that Plaintiffs assert were

---

[1] Defendants' Declarations do not appear to have been formally filed with the Court, but Plaintiffs received the Declarations by hand delivery on November 25 and understand that the Court received Defendants' Declarations by hand as well.  Although both Declarations purport to be filed on behalf of Jian Li, Susan Li, and the Wu Liang Ye corporate defendants, corporate defendants cannot appear pro se. Pearson Ed., Inc., v. Kumar, No. 07 Civ. 9399-CSH, 2008 WL 4891252, at *1 (S.D.N.Y. Nov. 12, 2008) ("Corporate parties cannot appear pro se.")  Accordingly, Defendants' Declarations should be treated as if filed on behalf of the individual defendants only.

unlawfully withheld.  Plaintiffs' stated money damages for all of these violations, as set forth in Exhibit A to the Opening Memorandum, are undisputed and thus should be granted.

Rather than contest Plaintiffs' damages figures, Defendants lodge six particularized challenges, many of which are directed to facts and liabilities that Defendants have already conceded by defaulting in this matter.  Specifically, as set forth in Defendant Jian Li's Declaration, Defendants ask the Court to find that Defendants did not act willfully, that the statute of limitations should not be tolled, that Plaintiffs are not entitled to liquidated damages, that Susan Li should not be personally liable for any violations (or, alternatively, that Jian Li should not be liable for violations between 2006 and 2009), that Plaintiffs' damages calculations for bicycle and uniform expenses be rejected or reduced, and that Plaintiffs' attorneys' fees be reduced.  (J. Li Decl. ¶ 65 (requesting these six forms of relief).)

As set forth in this Reply Memorandum, each of these requests should be rejected.  By defaulting, Defendants have conceded the well-pleaded allegations in the Complaint that they acted willfully, that they therefore must pay Plaintiffs liquidated damages, that Plaintiffs were unaware of their rights until shortly before this lawsuit and therefore the statutes of limitations should be tolled, and that they are personally liable for the unlawful violations asserted in the Complaint.  In any event, Defendants have not raised any real factual dispute as to these issues.

As to the damages figures that Defendants do purport to challenge—those involving (i) bicycle and uniform expenses; and (ii) attorneys' fees—these should be awarded by the Court in the amount requested by Plaintiffs.  Defendants' challenge to the

bicycle expenses spent by Plaintiffs fail to recognize that the relevant bicycles were used for thousands of deliveries every year and therefore required frequent maintenance and replacement.  Defendants' assertion that it was industry practice to require employees to pay for bicycles and uniforms fails to address the reality that this "industry practice" was illegal.  Finally, Defendants' assertion that Plaintiffs' attorneys' fees are unreasonable fails because these fees have already been discounted substantially from counsels' normal rates and represent an appropriate amount of time billed for a matter involving twenty six plaintiffs and multiple defendants that was concluded only upon the eve of trial.

For these reasons, and as reflected more fully herein, Plaintiffs' damages calculations should be approved by this Court.

**ARGUMENT**

**I.     DEFENDANTS ACTED WILLFULLY AND THEREFORE OWE PLAINTIFFS LIQUIDATED DAMAGES**

In their Declarations, Defendants assert that they did not willfully violate the federal and state wage and hour laws and therefore need not pay liquidated damages. This argument is both irrelevant and erroneous.

It is irrelevant because Defendants defaulted on all of Plaintiffs' well pleaded allegations of liability in the complaint, including that the Defendants' violations were willful.   (Compl. ¶¶ 38, 41, 43, 48, 53, 64, 66, 69, 70-74, 76, 80, 84, 88); see also Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) ("[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability . . . ."); Mendez v. Nooch, Inc., No. 07 Civ. 11174, 2009 WL 666771, at *4 (S.D.N.Y. Mar. 6, 2009) (holding, in a case involving a default judgment, that because

3

the "New York wage violations were willful, see Compl. PP 77, 80, 84, 88, Plaintiff is also entitled to liquidated damages . . . ."); <u>Dong v. CCW Fashion Inc.</u>, Nos. 06 Civ. 4973, 07 Civ. 9741, 2009 WL 884680, at *4 (S.D.N.Y. Feb. 19, 2009) (noting allegations of willfulness in the complaint and holding that "[t]he defendants defaulted and therefore plaintiffs are entitled to (a) a finding that the defendants' conduct was willful, and (b) an award of the additional damages provided by statute.").  This issue cannot be disputed now.

    This assertion also is erroneous because, as Defendants' own Declarations corroborate, there can be little doubt that their violations were willful.  Defendants' primary contentions are that they never attempted to learn about federal and state wage and hour laws after they became managers of Wu Liang Ye 86th Street and Wu Liang Ye Lexington Avenue (collectively, the "Restaurants"), and instead merely continued the wage and hour practices implemented by their predecessors.  (J. Li Decl. ¶¶ 12-14, S. Li Decl. ¶ 3.)  If true, this confirms that Defendants never made inquiries to determine (1) if there were laws governing their wage and hour practices and (2) if so, whether their practices were in compliance with these laws.  Such professed ignorance—however unlikely—amounts to reckless disregard and falls woefully short of Defendants' obligation to make reasonable inquiries into the legality of their practices.  Thus, Plaintiffs are entitled  liquidated damages under New York law.[2]  <u>See, e.g.</u>, <u>McLaughlin v. Richland Shoe Co.</u>, 486 U.S. 128, 133 (1988) (willfulness includes "reckless disregard for the matter of whether [their] conduct was prohibited by the statute"); <u>Ayres v. 127</u>

_____

[2] New York Labor Law provides for liquidated damages where the defendants act willfully.  N.Y. Lab. Law §§ 198(1-a).

4

<u>Restaurant Corp.</u>, 12 F. Supp. 2d 305, 309 (S.D.N.Y. 1998) (finding that plaintiffs were entitled to liquidated damages under New York Labor Law because the defendant failed to show that it made "reasonable inquiries into the relevant law, or that it actually reviewed its own [] practices, or that it relied on the advice of counsel . . .") <u>aff'd</u> 201 F.3d 430 (2d Cir. 1999).

For the same reasons, Defendants cannot establish a good faith defense to Plaintiffs' claims for liquidated damages under the FLSA.[3]  Contrary to the Defendants' contentions, the good faith inquiry under the FLSA does not depend on whether the employers intended to maximize their profits, although Defendants violations here maximized their profits by hundreds of thousands of dollars.  Rather, the question is whether the Defendants took "active steps to ascertain the dictates of the FLSA and then act[ed] to comply with them."  <u>Herman v. RSR Sec. Servs. Ltd.</u>, 172 F.3d 132, 142 (2d Cir. 1999).  Defendants' own contentions—that they remained unaware of the FLSA even as they worked as managers of restaurants—prevent a finding that they acted in good faith. <u>Tlacoapa v. Carregal</u>, 386 F. Supp. 2d 362, 368 (S.D.N.Y. 2005) ("Ignorance of FLSA requirements is insufficient to establish good faith . . . .").

Moreover, Mr. Li's own Declaration casts substantial doubt on his assertion that he was unaware of minimum wage requirements while managing  the Restaurants.  First, Mr. Li acknowledges that he saw posters with "minimum wage information" posted in the Restaurants.  (J. Li Decl. ¶ 15.)  Although he claims that he never read these posters, he must have done so in order to know the information provided by them.  Second, Mr.

---

[3] Under the FLSA, Plaintiffs are entitled to liquidated damages unless Defendants affirmatively demonstrate that they acted in good faith.  29 U.S.C. §§ 216(b), 260.

5

Li concedes that he believed that he had not violated any laws because the workers received tips and ate meals at the Restaurants (J. Li Decl. ¶ 35), indicating again that he knew of the existence of laws regarding a minimum wage.

Mr. Li's deposition testimony also raises questions as to the veracity of his contention that the Restaurants began compliance with federal and state minimum wage laws after Mr. and Ms. Li supposedly learned of these laws in 2007.  (J. Li Decl. ¶ 26.) At his deposition, Mr. Li acknowledged that the Defendants failed to take steps to ensure that their employees were paid in accordance with those laws even after they supposedly learned of their obligations.  (Transcript of August 7, 2009 Deposition of Jian Li ("J. Li Dep.") (Ex. 27)[4] 131:3-7 (testifying that he did not know, as of August 2009, whether the busboys at the Restaurants currently received wages at or above the minimum wage); 189:20-190:6 (testifying that he did not know, as of August 2009, about the spread-of-hours requirements of New York Labor Law).)

Accordingly, Defendants have failed to dispute that the Plaintiffs are entitled to liquidated damages under state and federal law.

## II.    DEFENDANTS FAIL TO DISPUTE THAT THE FLSA AND NEW YORK LABOR LAW STATUTES OF LIMITATIONS SHOULD BE EQUITABLY TOLLED FOR THE ENTIRETY OF PLAINTIFFS' EMPLOYMENT

Defendants attempt to raise a factual issue as to whether the statutes of limitations should be equitably tolled by focusing on the immaterial issue of whether an English notice was posted in the Restaurants and highlighting the irrelevant fact that regulations only require English and Spanish notices.  (J. Li Decl. ¶¶ 38, 44.)

---

[4] Citations to numbered exhibits refer to the exhibits attached to the Declaration of Jane H. Yoon, dated November 4, 2009, filed in support of Plaintiffs' Application for Damages.

The only relevant inquiry is whether Plaintiffs were aware of their rights.  See,
e.g., Cerbone v. Int'l Ladies' Garment Workers' Union, 768 F.2d 45, 48 (2d Cir. 1985)
("The essence of the doctrine [of equitable tolling] is that a statute of limitations does not
run against a plaintiff who is unaware of his cause of action.") (citations and internal
quotation marks omitted).  All of the Plaintiffs testified that they were unaware of their
rights to a minimum wage and overtime pay until shortly before bringing this lawsuit—in
most cases, 2007—when they heard or read about similar wage-and-hour violations and
lawsuits at other New York City restaurants, such as the case against Saigon Grill.
(Plaintiffs' Opening Memorandum at p. 7-8.)   Whether or not Defendants were
independently required to post a notice in a language that Plaintiffs could readily observe,
read, and understand, their failure to do so prevented Plaintiffs from learning about their
rights at the workplace and thus equitable tolling is warranted.  See 29 C.F.R. § 516.4
(the FLSA requires that employers "post and keep posted a notice explaining the Act . . .
in conspicuous places in every establishment where such employees are employed so as
to permit them to observe readily a copy"); United States v. Sabhnani, 566 F. Supp. 2d
139, 145-46 (E.D.N.Y. 2008) (finding that in a case where no minimum wage poster was
displayed, workers' lack of English ability made them completely unaware of the FLSA
and therefore entitled to equitable tolling).

Defendants' assertion that Plaintiffs—uneducated workers—must have known
about their rights because of their work in the restaurant industry is inconsistent with one
of the fundamental (and implausible) premises underlying the Defendants' own
Declarations.  (J. Li Decl. ¶ 42.)  In almost every other paragraph of their Declarations,
Defendants contend that they—restaurant managers in charge of wage and hour policies

7

over a period of several years—were unaware of federal and state wage and hour laws.

Defendant Jian Li, a college graduate, alleges that he "never read" the non-Chinese

posters in the Restaurants (J. Li Decl. ¶ 38), yet contends that the Plaintiffs must have

learned about their rights from these posters.  Defendants, with years of experience as

managers in the industry, cannot seriously profess their own lack of awareness on the

subject of wage and hour laws and simultaneously maintain that Plaintiffs should have

known of such laws.  Accordingly, the statutes of limitations should be equitably tolled to

cover the entirety of Plaintiffs' employment.  At a minimum, the FLSA statute of

limitations should be tolled from two to three years due to the willful nature of

Defendants' violations.[5]

## III.   DEFENDANTS JIAN LI AND SUSAN LI ARE PERSONALLY LIABLE FOR PLAINTIFFS' UNPAID WAGES

As an initial matter, the Defendants defaulted on Plaintiffs' allegations that

Defendants Jian Li and Susan Li were "employers" and therefore are liable for Plaintiffs'

damages.  (Compl. ¶¶ 17-20.)  See, e.g., Greyhound, 973 F.2d at 158.  As noted supra,

Defendants cannot raise factual disputes at this inquest as to issues of fact on which they

defaulted.

### A.   Jian Li is Responsible for Unpaid Wages for the Entire Period of His Role as Manager

Even had he not defaulted on this point, Mr. Li's arguments for why he was not

an employer subsequent to April 2006 fail.

---

[5] As set forth in the Opening Memorandum, the FLSA statute of limitations should be tolled, at a minimum, from two years to at least three years regardless of equitable tolling due to the willful nature of Defendants' violations.  29 U.S.C. § 255(a); Mendez, 2009 WL 666771, at *4.

First, Mr. Li argues that he simply hired the managers for the Restaurants and played no role in hiring the waiters and deliverymen, determining their wages, and setting their schedules and working requirements.  (J. Li Decl. ¶ 8.) Yet an individual can be deemed an employer even if that individual "may have shared or delegated operational control to other[s]," Moon v. Kwon, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002).  As Defendants concede, Mr. Li exercised control over the decisions of the managers relating to the working conditions of delivery workers and waiters at both Restaurants, including hiring and firing employees, setting wages, and setting terms and conditions of employment.  (J. Li Dep. (Ex. 27) 30:25-31:15, 128:13-16, 129:20-23 (testifying that he, in consultation with the managers, determined the Plaintiffs' wages); Transcript of July 1, 2009 Deposition of Susan Li ("S. Li Dep.") (Ex. 28) 33:8-34:11 (testifying that, before March 2008, Jian Li would determine employee wages); J. Li Decl. ¶ 49 ("I approved the managers' recommendations for the workers' wages and payment methods and I was solely responsible for the business operations and control of the restaurants . . . I was responsible for putting the business information together, transmitting it to Wu Liang Ye's accountant for tax and accounting purposes, and I maintained the business records.").)  Hiring individuals who were in charge of the workers "is a strong indication of control."  Herman, 172 F.3d at 140.

Second, Mr. Li contends that he should not be liable for damages incurred after April 2006 because he was not involved in the day-to-day management of the Restaurants after that time.  (J. Li Decl. ¶¶ 10, 54.)  But when determining if an individual is an employer, it does not matter that an individual "exercised [operational] control infrequently."  Moon, 248 F. Supp. 2d at 237.  Although Jian Li was no longer a day-to-

9

day manager of the Restaurants after April 2006, he remained the senior manager of both Restaurants and an active participant in the Restaurants' business decisions, including setting employee wages and conditions of employment and maintaining employment records.  (J. Li Dep. (Ex. 27) 44:10-18; S. Li Dep. (Ex. 28) 33:8-34:11 (testifying that, before March 2008, Jian Li would determine employee wages); J. Li Decl. ¶ 10 ("Since that time [April 2006] . . . I retained my authority to sign checks for salaries and wages for both restaurants."); J. Li Decl. ¶ 49 (after April 2006, Jian Li was "the only person to be solely responsible to Wu Liang Ye Group for the business operations").)

Under the Second Circuit's expansive definition of an "employer," an individual with financial control over the company, control over the managers, and the authority to participate in business decisions and sign paychecks can be held personally liable for wage and hour violations even without day-to-day supervision of the workers.  Herman, 172 F.3d at 139 ("Control may be restricted or exercised only occasionally, without removing the employment relationship from the protections of the FLSA.").  Accordingly, Mr. Li was an employer from August 1, 2001 to the time the Restaurants closed, and can therefore can be held personally liable for damages incurred during that time period.

**B.   Susan Li is Responsible for Unpaid Wages for the Entire Period of Her Role as Manager**

Defendants attempt to raise a factual dispute with respect to Defendant Susan Li's status as an employer by alleging that she did not have the authority to determine employees' schedules, wages, working conditions and method of payment.  (S. Li Decl. ¶ 3; J. Li Decl. ¶ 48.)  This contention is belied by the testimony of the Defendants in their

10

depositions and Declarations.  (S. Li Dep. (Ex. 28) 29:23-30:16 (testifying that she

decides, in consultation with vice managers, who should be hired and who should be

fired); S. Li Dep. (Ex. 28) 34:12-37:10 (testifying that she, in consultation with the vice

managers and Jian Li, decided employee schedules); Susan Li Decl. ¶ 3 ("I would have to

supervise the workers so that they perform their jobs [sic] duties as required by the

restaurant"); J. Li Decl. ¶ 48 ("[S]he participated in the decision to hire and fire

workers"); J. Li Decl. ¶ 49 ("Susan Li and the other managers were all authorized by me

to determine the workers' wages and the workers' work schedule").)  Under the

economic realities test used in this Circuit (Plaintiffs' Opening Memorandum at p. 30),

Susan Li was an "employer."  Therefore, even had Ms. Li not defaulted as to her liability,

Defendants have not created any factual dispute with respect to it.

## IV.    PLAINTIFFS' DAMAGES CLAIMS FOR BICYCLE AND UNIFORM PURCHASES ARE REASONABLE

Defendants contest Plaintiffs' claims for damages related to their purchases and

maintenance of bicycles and uniforms by asserting that (i) they should not be liable for

such expenses because it was industry standard to require workers to pay for their own

bicycles and uniforms; and (ii) the damages figures are unsupported and excessive.  (J. Li

Decl. ¶¶ 56-59.)  Both of these assertions fail.

First, whether it was industry practice to require restaurant workers to provide

their own bicycles and uniforms is irrelevant as to the lawfulness of that requirement.

See Chung v. New Silver Palace Rest., Inc., 246 F. Supp. 2d 220, 229 (S.D.N.Y. 2002)

("[D]efendants cannot ascribe to 'tradition' that which has been adjudged to be illegal.").

The FLSA prohibits employers from requiring employees to purchase the tools of their

11

trade, such that employees' resulting compensation falls below the minimum wage. 29 C.F.R. § 531.35. Numerous courts have found that a transportation vehicle is a "tool of the trade." Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240 (S.D.N.Y. 2008). Moreover, the U.S. Department of Labor has determined that the "cost of uniforms and of their laundering, where the nature of the business requires the employee to wear a uniform," may not reduce an employee's wages below the statutory minimum. 29 C.F.R. § 531.3(d)(2). Defendants' requirement that employees provide their own bicycles and uniforms was unlawful regardless of industry practice.

Second, Plaintiffs' bicycle expenditures are reasonable, particularly given the context within which the bicycles were used. Most delivery workers worked from 60 to 75 hours per week and were required to make between 35 and 40 deliveries each day. (Transcript of June 24, 2009 Deposition of Xian H. Zhuang ("Zhuang Dep.") (Ex. D)[6] 17:19-18:4.) Additionally, Plaintiffs at both Restaurants were required to make deliveries over a geographic area of 40 blocks. (S. Li Dep. (Ex. B) 50:14-51:4.) Bicycles frequently broke down and required repair or replacement. (Zhuang Dep. (Ex. D) 35:19-36:4.) In this light, Plaintiffs' damages arising from bicycle purchases and maintenance are reasonable. Mr. Li asserts that Plaintiffs could have purchased used bicycles for $10 or $20, but does not explain where such bicycles could be purchased—let alone whether $10 bicycles could properly handle the workload of thousands of deliveries per year.

As to the waiter-Plaintiffs' expenditures on uniforms, Defendants claim that these should not provide a basis for damages because the waiters wore their uniforms outside

---

[6] Citations to lettered exhibits refer to the exhibits attached to the J. Li Decl.

of work.  (J. Li Decl. ¶ 59.)  However, the deposition testimony that Mr. Li cites for this

proposition establishes only that Plaintiffs were permitted to do so, not that they did.

(Transcript of June 24, 2009 Deposition of Jin M. Cao ("Cao Dep.") (Ex. C) 28:6-19,

53:22-54:9.[7])  It is well established that when an employer requires clothing of a

particular color to be worn during working hours, this clothing constitutes a required

uniform that may not reduce an employee's wages below the minimum wage, even if the

uniform could conceivably be worn outside of working hours.  See Chan v. Sung Yue

Tung Corp., No. 03 Civ. 6048 (GEL), 2007 WL 313483, at *22 (S.D.N.Y. Feb. 1, 2007)

(holding that a white shirt, tie, black pants, and black shoes, constituted a required

uniform); see also Ayres, 12 F. Supp. 2d at 310 (finding that "a white shirt, black shoes,

and black socks" might be considered a required uniform even thought they could be

worn as "part of an employee's ordinary wardrobe"); but see  Lu v. Jing Fong Restaurant,

Inc., 503 F. Supp. 2d 706, 712 (S.D.N.Y. 2007).

     For these reasons, Plaintiffs submit that their bicycle and uniform damages are

appropriate and should be awarded.

## V.    PLAINTIFFS' COUNSELS' HOURS WERE CONTEMPORANEOUSLY RECORDED AND ARE RELEVANT AND REASONABLE

     Defendants claim that the time records of Plaintiffs' counsel were not

contemporaneously recorded because they were re-generated for the purposes of a fee

award.  (J. Li Decl. ¶ 60.)  To the contrary, as set forth in the Declarations of James H.R.

Windels dated November 4, 2009 (the "Windels Decl."), Plaintiffs' counsel were

---

[7] Although earlier in his deposition Mr. Cao stated that he wore his uniform outside of work, he later clarified that he meant he wore his uniform on his way to and from work, but not during off-days.

13

required by firm policies to contemporaneously record their time.  (Windels Decl. ¶¶ 5,

7.)  In the case of Plaintiffs' attorneys from Davis Polk, their hours were put into an

electronic recording system at or near the time the work was performed, and the records

submitted to the Court were generated from that recording system. (Windels Decl. ¶¶ 5,

7.)[8]

     Defendants also contest the relevance of various time entries made by Plaintiffs'

counsel, but the examples they provide offer little support for this argument.  (J. Li Decl.

¶ 61.)  For example, Plaintiffs' entry for "searching for assets and judgment enforcement"

is directly relevant to damages collection in this matter.  Research on "Chinese Wu Liang

Ye corporation and BCL 630" was a direct result of Defendants' assertions that the Wu

Liang Ye Group in China was related to the Wu Liang Ye Restaurants.  (J. Li Decl. ¶¶ 4,

5.[9])  Research on matters related to retaliation was undertaken to determine whether to

bring such claims against Defendants.  Meetings with and about Steven Lok—a former

manager at the Wu Liang Ye Restaurants whom Plaintiffs placed on their witness list

(Plaintiffs' Proposed Pretrial Order at p. 16)—were critical to Plaintiffs' fact gathering

and would have aided Plaintiffs at trial.

     Defendants also contest the reasonableness of the number of hours spent on many

issues.  (J. Li Decl. ¶¶ 62, 63.)  There are several reasons why these hours were

reasonable.  First, Plaintiffs' counsel is only seeking fees for the period from October 1,

---

[8] In addition, Plaintiffs' counsel from the Asian American Legal Defense and Education Fund
affirmed that he contemporaneously recorded his time.  (Declaration of Kenneth Kimerling, dated
November 4, 2009 ¶ 2.)

[9] N.Y. Bus. Corp. Law § 630 states that the ten largest shareholders of a corporation are jointly
and severally liable for wages due to employees.

2008 through and including October 8, 2009—well after the April 2008 Complaint was filed and therefore excluding all attorney work leading up to the filing of the Complaint—as Defendants did not begin actively defending this action until September 2008 and defaulted on October 8, 2009.  (Windels Decl. ¶ 7.)  Second, Plaintiffs' counsel excluded substantial billed time of various legal and non-legal staff in light of the Defendants' default.  (Windels Decl. ¶ 8.)  These deductions were undertaken precisely to obviate the types of objections that Defendants now lodge.

Finally, this matter required a substantial amount of work.  Among other things, Plaintiffs' counsel conducted necessary legal research and factual investigations (involving twenty six plaintiffs and multiple defendants), engaged in settlement negotiations, conducted substantial discovery, and prepared for trial.  (Windels Decl. ¶ 9.)  The entries that Mr. Li singles out as unreasonable (for Deepika Bains on September 25, 2009 and for Russell Capone from September 4 through September 29, 2009) were all performed in anticipation of the trial scheduled to begin on October 13, 2009, the most active time for any litigation.

For these reasons, Plaintiffs' attorneys fees are appropriate and reasonable and should be awarded.[10]

---

[10] Although Defendants appear to contest only the six issues noted in paragraph 65 of Mr. Li's declaration and discussed herein, Mr. Li also addresses the issue of unlawful tip deductions during his discussion of willfulness.  (J. Li Decl. ¶¶ 31-34.)  Importantly, however, Mr. Li disputes neither that Defendants made the alleged deductions from Plaintiffs' credit card tips nor the amount of those deductions.  Instead, Mr. Li offers unconvincing justifications for the deductions.  His assertion that some of the deducted credit card tips were "used to pay the employees' wages withholdings" is not supported by any of the Restaurants' records.  His assertion that the tip deductions were common business practices does not transform the unlawfulness of those deductions.  See Chung 246 F. Supp. 2d at 229 ("[D]efendants cannot ascribe to 'tradition' that which has been adjudged to be illegal.").  And his assertion that waiters willingly shared their tips with the busboys and kept the entirety of their cash tips is contrary to the defaulted allegations in the Complaint.  (Compl. ¶ 60.)

## CONCLUSION

Plaintiffs respectfully request that the Court award them $2,000,617.13 in damages, $335,145.00 in s attorneys' fees, and $6,184.08 in costs, all as set forth in Exhibit A to the Opening Memorandum.

Dated:   New York, New York
         December 11, 2009

                              DAVIS POLK & WARDWELL

                              By:      /s/ Brooke A. Russakoff
                                    Jane H. Yoon
                                    Russell Capone
                                    Brooke A. Russakoff
                                    450 Lexington Avenue
                                    New York, NY 10017
                                    (212) 450-4000

                                    Kenneth Kimerling
                                    Asian American Legal Defense
                                       and Education Fund
                                    99 Hudson Street
                                    New York, New York 10038
                                    (212) 966-5932

                                    *Attorneys for Plaintiffs*

---

Finally, although his Declaration is unclear on this point, Mr. Li may be asserting that Plaintiffs should be subjected to the tipped minimum wage if they are given back their unlawfully deducted tips. (J. Li Decl. ¶ 34.)  But there is no legal support for this proposition, and the laws governing unlawful deductions and tipped wages are distinct.  See N.Y. Lab. Law § 198-d; 29 C.F.R. § 531.35; 29 U.S.C. § 203(m).  Further, as discussed in the Opening Memorandum, Defendants are not entitled to the benefit of the tipped minimum wage for the reason that they failed to inform the employee of the statutory requirements related to the tip credit.  29 U.S.C. § 203(m).